517 So.2d 558 (1987)
Charles SELLECK
v.
S.F. COCKRELL TRUCKING, INC.
No. 56425.
Supreme Court of Mississippi.
December 2, 1987.
Rehearing Denied January 13, 1988.
Bill Waller, Sr., Cotton Ruthven, Waller & Waller, Jackson, for appellant.
John H. Downey, Downey & Brown, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
On July 12, 1983, Ruth Selleck, on behalf of two (2) surviving children of Walter Henry Selleck, deceased, filed suit against S.F. Cockrell Trucking, Inc. (Cockrell) in the Circuit Court of Jefferson Davis County. After the jury returned a verdict for Cockrell, the trial court granted Selleck's motion for a new trial. Thereafter, Charles Selleck replaced Ruth Selleck as the named plaintiff representing the children of the deceased, and a third child of *559 the deceased was added as a survivor. At the conclusion of the second trial on the merits, the jury returned a verdict in favor of Cockrell. From judgment entered pursuant to that verdict, Selleck appeals.

FACTS
Ize Collins was a truck driver for S.F. Cockrell Trucking, Inc. On June 9, 1983, Collins was hauling saw dust and bark from Silver Creek, Mississippi, to Bogalusa, Louisiana. Collins, whose pay was based on the number of loads hauled, had already made two (2) trips to Bogalusa that day and was returning to Silver Creek to pick up a third load. At approximately 12:30 p.m., Collins was driving his eighteen-wheel tractor-trailer north on Highway 13 between Columbia, Mississippi, and Prentiss, Mississippi. A Volkswagen "bug" driven by Walter Selleck was in front of Collins on the two-lane road. According to Collins, the Volkswagen was traveling between 40 and 45 miles per hour. Collins moved into the left lane to pass the Volkswagen. According to Collins' testimony, just as he was moving into the left lane, the Volkswagen moved over into the left lane without giving any turn signal. Collins skidded and then the right (passenger side) front of his truck struck the driver's door of the Volkswagen. After the collision, the truck was partly off the left shoulder of the road and partly in the left lane. The Volkswagen was straddling the center line. Walter Selleck died from injuries received in the collision.
The evidence is conflicting as to 1) the speed at which Collins was driving, and 2) the manner in which Selleck's Volkswagen moved into the left lane. Immediately after the collision, Collins told Mississippi State Trooper Jerry Kilpatrick that his speedometer read 57 miles per hour at the moment he hit his brakes and began skidding. The speed limit on Highway 13 at that time was 55 miles per hour. At trial, however, Collins admitted on cross-examination that his speedometer was "off some," although he did not know how much. There is no indication in Collins' testimony or elsewhere in the record as to whether the speedometer was "off" high or "off" low. Selleck's expert witness was William Eugene Hughes, Ph.D. physicist. Based on his tests and measurements of the skid marks, the gouges in the pavement, the length of the truck, the grade of the highway's slope, and the coefficient of friction, Hughes testified that in his opinion the minimum speed of Collins' truck at the time it began leaving skid marks was 72 miles per hour.
As to the manner in which the Volkswagen moved into the left lane, Collins claimed that the car moved without giving a signal and that he did not know whether the car was turning left. Selleck's expert Hughes testified that, in his opinion, the Volkswagen was making a left turn as it was struck. There was, at the point of the collision, a store on the left side of the highway, although testimony indicated that it was closed and was overgrown with weeds.
Ruth Selleck Dyess, ex-wife of the deceased, filed a wrongful death suit on behalf of two (2) of Walter Selleck's surviving children. She alleged, inter alia, that Collins had been speeding and had failed to keep a proper lookout, and that Cockrell had negligently entrusted the truck to Collins. At the conclusion of the first trial, the jury returned a verdict for Cockrell, but the trial court granted Selleck's motion for a new trial.
Between the first and second trials, Walter Selleck's brother Charles replaced Ruth as the plaintiff representing the children. Also, a third child of the deceased was named as a survivor.
The second jury also returned a verdict in favor of Cockrell. From that verdict Selleck appeals assigning six (6) errors. Because one (1) is dispositive, we need not address the others.

DID THE TRIAL COURT ERR IN NOT DECLARING A MISTRIAL BECAUSE OF MISCONDUCT ON THE PART OF COCKRELL?
On the third day of the trial, S.F. Cockrell, owner of the defendant/appellee S.F. Cockrell Trucking, Inc., went into the jury room and conversed with jurors for *560 ten or 15 minutes. With other jurors present he spoke with Mrs. Jones, a juror, about church, her uncle, and biscuits. Then Cockrell told Hall, a juror who was by profession a concrete finisher, that he (Cockrell) needed some work done on his driveway and that he would like Hall to do the work. When this conversation was brought to the attention of the trial court, the judge offered to grant plaintiff Selleck a mistrial. After consulting with his client regarding the trial court's offer, plaintiff's counsel stated the following:
It's just economically impossible to pay all these expenses again. We're just going to have to take the position that, even though three little children are involved, there's just not any money here to finance a third trial, and if we can't recover some of our expenses,  I've got approximately  with Dr. Hughes's second day here, I've probably got in the range of $2500 in actual expenses in this trial. I'd have to go calculate it, and just under the  under the economics of the thing, we've got to go ahead for a conclusion, if we possibly can.
Seldom has this Court encountered such a blatant attempt to influence a juror. We find it difficult to believe that Cockrell did not know the impropriety of offering employment to a juror during the trial. We would be remiss in our duty to administer justice if we allowed such misconduct to go unsanctioned. In Great American Surplus Lines, Inc. v. Dawson, 468 So.2d 87 (Miss. 1985), we reversed because material witnesses had talked and laughed with jurors during the trial. There we stated that "whatever tends to threaten public confidence in the fairness of jury trials, tends to threaten one of our sacred legal institutions." Id. at 90.
Cockrell argues that Selleck waived this issue when, through counsel, he affirmatively stated that he did not want the circuit court to declare a mistrial. We note, however, that Selleck's counsel stated that his client could not afford a third trial unless he could "recover some of [his] expenses" for the second trial, which he estimated to be $2,500.00. What occurred in the case at bar was an attempt to influence a juror by offering him employment. The only relief which the trial court offered Selleck was a mistrial with a $2,500.00 price tag attached. Thus, Cockrell's intentional, inexcusable conduct put Selleck between a rock and a hard place: he could let his case go to a tainted jury, or he could lose the $2,500.00 expended so far and still have no verdict. The trial court should not, nor should we, stand by and allow a wrongdoer like Cockrell to force such a choice.
In Ladner v. Ladner, 436 So.2d 1366, 1370 (Miss. 1983), we held that even where there is no specific statutory authority for imposing sanctions, courts have an inherent power to protect the integrity of their processes, and may impose sanctions in order to do so. More recently, in Vicksburg Refining, Inc. v. Energy Resources Ltd., 512 So.2d 901 (Miss. 1987), we held that "[w]hen counsel's carelessness causes his opponent to expend time and money needlessly, it is not an abuse of discretion for the court to require offending counsel to pay for his mistake, especially where ... out-of-town travel was involved." Id. at 902. In the case at bar, we conclude that where a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney's fees and expenses should be awarded to the wronged party. Although not all misconduct would warrant such an award, Aeroglide Corporation v. Whitehead, 433 So.2d 952 (Miss. 1983), Cockrell's blatant attempt to influence a juror requires this sanction. Therefore, the judgment is reversed and the cause remanded for the trial court to 1) conduct a new trial and 2) award Selleck attorney's fees and reasonable expenses for the second trial, including the expense resulting from the presence of the expert witnesses.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.