760 So.2d 774 (1999)
Billy L. WARDLEY, Jr., a/k/a Billy Lewis Wardley, Appellant,
v.
STATE of Mississippi, Appellees.
No. 1998-KA-00967-COA.
Court of Appeals of Mississippi.
September 7, 1999.
Rehearing Denied May 2, 2000.
*775 Pamela A. Ferrington, Natchez, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellees.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Billy L. Wardley, Jr., was convicted in the Franklin County Circuit Court of one count of the sale of a controlled substance. He was sentenced as an habitual offender to a term of thirty years in the custody of the Mississippi Department of Corrections. On appeal, Wardley contends that the identification given by the undercover agent was insufficient to sustain the verdict against him. Wardley further alleges that the State impermissibly exercised its peremptory challenges to exclude all blacks from the jury. Because his attorney failed to object to the State's discriminatory exercise of its challenges, Wardley claims he was denied effective assistance of counsel. Finally, in further support of his contention that his counsel was ineffective, Wardley points to his attorney's failure to submit an identification instruction. We find no error in the allegations and affirm.

FACTS
¶ 2. On November 22, 1994, agents from the Mississippi Bureau of Narcotics arranged to make undercover drug purchases. Two agents from the Bureau, a McComb police officer, the Franklin County Sheriff, and a confidential informant met at the pre-arranged meeting place. Eric Allen, the McComb police officer, served as a contract agent with the Bureau. On this date, he was fitted with a body transmitter and given $50 with which to purchase drugs. After the confidential informant was searched, he and Allen departed in an undercover vehicle. The remaining *776 individuals listened to the subsequent events via the body transmitter.
¶ 3. Allen and the informant drove around Bude and saw Pete Smith. The informant told Smith that he and Allen wished to purchase some crack cocaine. Smith then got in the vehicle with them and helped them search for someone from whom they could purchase cocaine. Smith described one dealer's vehicle. They found it in the parking lot of an apartment complex. The informant went inside and returned with the defendant, Billy Wardley. Wardley got in his vehicle and indicated to Allen that he and the others should follow him.
¶ 4. Wardley drove to an area near a vacant lot and went inside a nearby residence. He returned within a couple of minutes and motioned for Allen to join him in his vehicle. Allen got inside Wardley's car and purchased three rocks of crack cocaine from him. He then went back to his own vehicle and along with the informant drove to the pre-buy meeting place. Along the way, Allen gave a description of the defendant over the transmitter. He stated that he had just purchased cocaine from "a black male wearing a white t-shirt, blue jeans, and a rag on his head." Wardley's vehicle was described as a faded maroon 1979 or 1980 Oldsmobile Cutlass, with four speakers sitting in the rear on top of the back seat. Allen later elaborated on his description of Wardley, describing him as "a black male, approximately 5'9, weighing approximately 175 pounds, with brown eyes and a thin mustache, light to medium complexion."
¶ 5. Wardley was indicted on April 18, 1995, for the illegal sale of a controlled substance. Following a trial held in the Franklin County Circuit Court, the jury found Wardley guilty. He was sentenced as an habitual offender to serve thirty years in the custody of the Mississippi Department of Corrections.

DISCUSSION

I. Sufficiency of the evidence
¶ 6. A challenge to the sufficiency of the evidence supporting a jury's verdict requires that we consider all of the evidence in the light consistent with the verdict. We give the prosecution the benefit of all inferences that may reasonably be drawn from the evidence. Only if the facts and inferences so considered points in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. Brooks v. State, 695 So.2d 593, 594 (Miss.1997).
¶ 7. Wardley points out that the State's only evidence against him was the identification given by the undercover agent, Eric Allen. According to Wardley, the identification is unreliable because it failed to include his more distinguishing characteristics, namely his gold teeth, extraordinarily long fingernails and the tattoos on his face.
¶ 8. A similar argument was raised by the defendant in Hall v. State, 546 So.2d 673, 678 (Miss.1989). There, the defendant claimed that the identification was questionable because it failed to mention the fact that two fingers of his right hand were missing and that he had facial hair. Id. The court rejected Hall's argument, noting that the agent testified that she was facing him when the transaction took place and could see him clearly despite low lighting. Further, her description of the defendant's height, weight, age, hair color and eye color was consistent with the defendant's general description at the time of his arrest. Id. Here, Agent Allen testified that he sat in the passenger seat of Wardley's car when he purchased the cocaine from Wardley, who sat in the driver's seat. He was sitting approximately eighteen inches from Wardley and had an opportunity to view him.
¶ 9. Wardley relies upon a precedent in which the confidential informant's description *777 of the defendant was erroneous by six inches and fifty pounds. Ashford v. State, 583 So.2d 1279, 1282 (Miss.1991). The court recognized that "[i]t is possible and indeed likely that witnesses will miss a person's height by a few inches and may miss a person's weight by a few pounds, maybe even ten or twenty ... It is not common, however, that a man, familiar with his own height and weight, will look at anothermuch taller and much heavier and estimate a shorter height and a lesser weight." Id. The court basically rejected the description as incredible, a conclusion that does not follow from the alleged error here.
¶ 10. "The character and adequacy of evidence of identification of an accused in a criminal case is primarily a question for the jury, provided the evidence could reasonably be held sufficient to comply with the requirement of proof beyond a reasonable doubt." Mamon v. State, 724 So.2d 878, 881 (Miss.1998). Allen's identification of Wardley was sufficient to sustain the guilty verdict.

II. Batson violation
¶ 11. Wardley was convicted by an all-white jury. He argues that this was a result of the State's discriminatory use of its peremptory challenges which eliminated the only potential black jurors in the jury pool. Wardley made no objection at trial to any of the State's peremptory strikes, and never asked that the State articulate race-neutral reasons for those strikes, nor did he object to the final composition of the jury. A party waives any and all claims regarding the composition of his jury if he fails to raise an objection before the jury is sworn. Smith v. State, 724 So.2d 280, 330 (Miss.1998).
¶ 12. Accordingly, Wardley claims that he was denied effective assistance of counsel due to his attorney's failure to object to the State's exercise of its peremptory challenges. At the hearing on Wardley's motion for a new trial, his former counsel testified that he did not raise any objections because of a continuing agreement that he had with the State that neither would object to the other's exercise of its peremptory challenges. Such an agreement is improper.
¶ 13. The supreme court recently denied a new trial under similar circumstances, though not in the context of ineffective assistance of counsel. Watts v. Mississippi, 733 So.2d 214, 230-31 (Miss.1999). Because the defendant's first trial had ended in a mistrial after a jury could not be seated, the defense attorney stated during the second trial that he wished to waive his Batson objections. Id. at ¶ 46. The State agreed that it would not invoke Batson if the defense did not. Id. Following his conviction, the defendant sought a new trial, charging that "the circuit court `willingly and intentionally permitted the prosecution and defense to engage in race-based and gender-based jury selection.'" Id. at (¶ 47). Relying on the defendant's participation in the waiver, the court denied the request for a new trial.
¶ 14. In rendering its decision, the court relied primarily upon Mata v. Johnson, 99 F.3d 1261 (5th Cir.1996). In that case, a similar agreement was reached where defense counsel and the prosecution explicitly agreed to exclude all eight black members of the venire panel. Id. at 1268. In determining whether the grant of a new trial was the only appropriate remedy, the court assumed that the defendant had standing to assert an equal protection claim on behalf of the excluded jurors. Id. at 1269. The court went on to note that "[t]he parties to this agreement, Mata included, have placed us in a `Catch 22' situation: Regardless of whether we do or do not grant a new trial, we will risk doing violence to public confidence in the judicial system either way...." Id. at 1270.
¶ 15. The court declined to adopt a per se rule that would mandate a new trial whenever venire members were excluded on the basis of race. Id. Instead, it held that "any time that a defendant requests a new trial on the basis of his own constitutional *778 violation, we shall consider the facts peculiar to that case, balance the competing harms to the system, and choose that course of action that we believe will do the least damage to the system and to the peoples' perception of it." Id. at 1270-71. The factors that weighed against ordering a new trial for Mata included the fact that he was convicted before the Supreme Court issued the Batson decision. The court noted that "in the ten years that have passed since Mata's conviction, Batson has been fleshed out and explained. We are convinced that the agreement in this case was unique at the time and is certainly an anachronism now. We are equally confident that such jury selection collusion among litigants and judges is virtually certain never to be repeated." Id. at 1271.
¶ 16. Such agreements have been repeated, at least twice in Mississippi and we expect more frequently. The supreme court relied upon the defendant's participation in the agreement in denying a new trial. Watts, at (¶ 49). According to the testimony of his trial attorney, Leonard Rosenthal, Wardley was not aware of this trial tactic.
¶ 17. There is no evidence that Wardley participated in the waiver of Batson. However, "a party is bound by the acts of his attorney." Stringer v. State, 627 So.2d 326, 330 (Miss.1993). There are instances in which a defendant's personal waiver is required. Winters v. Cook, 489 F.2d 174, 178 (5th Cir.1973). The exceptional circumstances that have been identified as requiring a defendant's personal waiver of a relevant right may be grouped into two broad categories: first, where there is evidence of fraud, or gross negligence or incompetence on the part of the defendant's attorney; and, second, where an inherently personal right of fundamental importance is involved. Id. Among those rights which are considered personal fundamental rights are the decision whether to plead guilty or proceed to trial, Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); the decision whether to be tried by judge or jury, Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942); the decision whether to appeal, Fay v. Noia, 372 U.S. 391, 439-40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and the decision whether to forego the assistance of counsel, Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, "the right to be indicted or tried by a constitutionally composed jury is not one of the rights traditionally considered so inherently personal that only the defendant may waive it." Winters, 489 F.2d at 180.
¶ 18. Though Winters is not binding upon us, we find no contrary authority. In the antagonistic categories of those rights which can and those which cannot be waived by an attorney, the question of what few people are struck from a jury seems far less inherently personal than whether to plead guilty and end the trial, whether not to appeal and end the case entirely, and whether or not to have a counsel act for the accused at all. Accordingly, we hold that Wardley's counsel could and did waive his rights under Batson v. Kentucky.
¶ 19. Whether such a waiver by his counsel constituted ineffective assistance is another matter. As a general proposition, once we find that counsel can waive this right, to reverse automatically because of ineffective assistance of counsel would in effect mean that counsel actually cannot waive it. Thus the mere waiver we do not find to be ineffectiveness. We can agree that entering into this improper agreement is outrageous on the part of both defense counsel and the prosecution. Perhaps the desired benefit was something along the lines of mutual exempt discrimination in the use of peremptory strikes. Batson may be controversial, but the obligation of officers of the court is to comply with it.
¶ 20. Outrageousness in conduct is not enough. To succeed on an ineffective *779 assistance of counsel claim, a defendant must show that counsel's performance was deficient, and that his defense was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We will not find deficiency unless it appears from that record that counsel's agreement caused the State clearly and systematically to discriminate in the jury selection process.
¶ 21. The excluded jurors were August Washington and Alice Devalt. Had Carolyn Tillman not been struck, she would have been the alternate. During voir dire, the prosecution asked whether anyone on the jury panel knew the defendant, Billy Wardley. Mr. Washington raised his hand and responded that "I just know him from being around from time to time. We washis mother and I were raised together, and his uncle and I was raised together." Another juror, Ms. Tillman, responded affirmatively to the question of whether anyone was acquainted with the defendant or any of his family members. She stated that her sister once dated the defendant's brother and that she considered herself a friend of Wardley's brother. Ms. Tillman indicated that the friendship would not affect her impartiality in the case. We do not find that Alice Devalt spoke up during voir dire. Whatever caused her to be struck may properly have come from the juror's questionnaire, from her actions if not her words during voir dire, or from other knowledge by the State. Or she may have been struck for improper reasons.
¶ 22. Excluding jurors on grounds that they are acquainted with the defendant is a facially race-neutral reason for excluding a juror. Govan v. State, 591 So.2d 428, 430 (Miss.1991). The court has accepted the use of a peremptory challenge against a juror who was acquainted with the defendant's family. Porter v. State, 616 So.2d 899, 907 (Miss.1993). Thus there does not appear of record an egregious use of these two strikes. Of course, the trial judge would have been entitled to find that reliance on the answers that the jurors gave during voir dire was a pretext for discrimination, but one of the effects of saying that this is a right that counsel can waive is that the judge was not put to that choice. There is no basis on this record for holding that defense counsel's agreement caused either one of these jurors to be rejected improperly.
¶ 23. Since all we have explaining the possible grounds for striking jurors is the voir dire, the limit of our knowledge of Ms. Devalt is that she is a black female. What else the State may have known about her is not before us. There is at least the possibility had Wardley's counsel objected to her being struck, that she would have remained on the jury. Deficient conduct for purposes of ineffective assistance is conduct so egregiously lacking in competence as to be the equivalent of not having a counsel at all. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Letting one juror be struck that need not have been, even if that were the case here, does not fall to that level.
¶ 24. Even were we to find the conduct deficient for this reason, in order to prove prejudice the defendant must then show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Chase v. State, 699 So.2d 521, 526-27 (Miss.1997). There is nothing in the record to support a finding that but for the absence of the one juror, or even two black jurors and the potential alternate, the outcome at trial would have been different. Wardley was not denied effective assistance of counsel.
¶ 25. Though we reach this conclusion of no reversible error, we suggest that the allegation that this prosecutor's officer enters into agreements to ignore Batson *780 should be thoroughly examined by the circuit judges hearing cases in that district. If this or any other district attorneys' offices in fact are agreeing to ignore potential discrimination, that should not be permitted by the trial court. The cost of any retrials necessitated by such agreements should become the obligation of the counsel who caused the trials to be held. State v. Blenden, 748 So.2d 77 (Miss.1999); Selleck v. S.F. Cockrell Trucking, Inc., 517 So.2d 558, 560 (Miss.1987).

III. Identification instruction
¶ 26. Finally, Wardley contends that he was denied effective assistance of counsel in that his attorney failed to submit an identification instruction which informed the jury of the relevant factors to consider in appraising the identification testimony of Agent Allen. Wardley argues that such an instruction was necessary fully to present his theory of defense, that Allen's identification of Wardley was unreliable.
¶ 27. As we stated previously, to prevail on his ineffective assistance of counsel argument, Wardley must demonstrate that: (1) his counsel's performance was deficient, and (2) this deficient performance prejudiced his defense. Wardley must prove that there is a reasonable probability that, but for the errors of his counsel, the verdict of the jury would have been different. Ellis v. State, 708 So.2d 884, 887 (Miss. 1998).
¶ 28. Among the factors highlighted in an identification instruction are: (1) whether the witness had an adequate opportunity to observe the offender, (2) whether the witness observed the offender with an adequate degree of attention, (3) the accuracy of the description provided by the witness, (4) the witness's certainty of the identification, and (5) the length of time which elapsed between the crime and the identification. Davis v. State, 568 So.2d 277, 280 (Miss.1990).
¶ 29. Agent Allen testified that he sat directly across from Wardley when he purchased the cocaine from him. By his estimate, he was less than two feet away from Wardley. He testified that he was positive that Wardley is the man who sold him the drugs. Allen described Wardley immediately after the completion of the drug transaction.
¶ 30. Attorneys are permitted wide latitude in their choice and employment of defense strategy. McClendon v. State, 712 So.2d 725, 728 (Miss.1998). A review of the factors that go into the instruction suggests that its submission could have reinforced the identification rather than weakened it. Failure to submit an identification instruction was not deficient on the part of defense counsel as there was no definite prejudice arising from its absence.
¶ 31. Finally, Wardley argues that his counsel was ineffective in failing to prevent the unduly suggestive in-court identification of him by Agent Allen, meaning the witness's identification of Wardley as he sat with his counsel at trial. Though not universally permitted, as counsel can attempt to place the client in a different and less prominent location when a genuine issue about in-court identification is going to be made, by far the prevalent practice is to have the accused sitting with counsel and for the witness to be asked to point him out. Young v. State, 352 So.2d 815, 817 (Miss.1977). We do not find that approach fundamentally flawed, nor do we find counsel to have been constitutionally deficient in failing to insist on some unorthodox procedure in this case.
¶ 32. THE JUDGMENT OF THE FRANKLIN COUNTY CIRCUIT COURT OF CONVICTION OF THE UNLAWFUL SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL *781 ARE ASSESSED TO FRANKLIN COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.