LEE, C.J.,
for the court:
PROCEDURAL HISTORY
¶ 1. A jury in the Leake County Circuit Court convicted Cecil R. Ben of forcible rape. Ben was sentenced to life in the custody of the Mississippi Department of Corrections. Ben’s post-trial motions were denied. Ben subsequently filed an appeal, asserting several issues that we have reordered as follows: (1) he was denied his right to a speedy trial; (2) he was not presented with a full jury panel before exercising his peremptory challenges; (3) the trial court erroneously admitted several hearsay statements; (4) the trial court erroneously admitted the testimony of Otis Mingo; (5) the evidence was insufficient to support the verdict, and the verdict is against the overwhelming weight of the evidence; and (6) his sentence was disproportionate to his crime.
FACTS
¶ 2. On October 3, 2007, at approximately 4:30 a.m., Ben, a bus driver with the Choctaw Transit Authority, picked up a passenger, Monica.[1] Monica was eighteen years old at the time and a student at East Central Community College. Monica lived on Highway 35 outside of Carthage, Mississippi. Monica testified that she was the first passenger on the bus that morning. At one point during the ride, Ben pulled over at the intersection of Highways 35 and 25 in Carthage. Monica testified that Ben then came back to her seat and tried to kiss her. Monica resisted his advances by pushing, kicking, and yelling; but Ben overpowered her. Monica testified that Ben was able to pin her down, while he pulled her pants and underwear down. Monica stated that Ben then inserted his penis into her vagina. Monica stated that after the rape, Ben cleaned himself with paper towels, and then he threw these paper towels out of the bus.
¶ 3. Monica did not notify anyone of the rape until October, 7, 2007, when she told her best friend, Maurice Hines. Monica testified that she waited until then to notify anyone because she was ashamed and embarrassed. Monica identified Ben in the courtroom as the person who had raped her.
¶ 4. Hines testified that he spoke with Monica the night of October 7th. Hines testified that he could tell that Monica was upset and urged her to confide in him. Hines testified that Monica then told him that she had been raped by Ben.
¶ 5. Monica then informed her mother of the situation, and her mother called the Choctaw Police Department. Officer Timothy Thomas responded to Monica’s home, where he took Monica’s statement and received the clothes Monica had worn at the time of the rape. Officer Thomas then followed Monica to the location of the rape, where Officer Thomas was able to locate *13 the paper towels used by Ben. Monica had informed Officer Thomas that the paper towels were “brown or pink-looking.” Officer Thomas then determined that the rape had occurred in Carthage, so the Carthage Police Department was notified and given the evidence collected thus far. On cross-examination, Officer Thomas testified that in his report, he noted that Monica told him that she had waited to report the crime because she felt ashamed, dirty, and partly responsible.
¶ 6. Officer Van Perry of the Carthage Police Department testified that he took possession of the four paper towels and the victim’s clothing. Officer Perry then handed the evidence to Officer Kevin Cross. Officer Perry also told Monica that she needed to undergo a rape test.
¶ 7. Sharon Hockett, a registered nurse with the Choctaw Health Department, was called in to perform an exam on Monica. Hockett testified that Monica appeared upset and frightened, but a rape kit was not performed because the rape had occurred over seventy-two hours prior to the exam.
¶ 8. Bill Jones, an analyst with the Mississippi State Crime Laboratory, testified that samples of a paper towel containing seminal fluid and blood samples from Ben and Monica were sent to a private forensic laboratory, Orchid Cellmark, in Texas for further DNA testing. Casey Dupont, the senior forensic scientist at Orchid, performed DNA testing on all three samples. Dupont testified that the stain on the paper towel contained a mixture consistent with the DNA from the blood samples from both Ben and Monica.
DISCUSSION
I. SPEEDY TRIAL
¶ 9. Ben argues that his constitutional right to a speedy trial was violated under the factors set out by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Since there is no set amount of time within which a defendant must be brought to trial, the United States Supreme Court has developed a balancing test to determine whether a defendant’s constitutional right to a speedy trial has been violated. See Barker, 407 U.S. at 530, 92 S.Ct. 2182. The four factors to be considered together and balanced are: (1) the length of delay, (2) the reason for the delay, (3) the defendant’s assertion of his right, and (4) prejudice to the defendant. Id. at 530-32, 92 S.Ct. 2182; see Stark v. State, 911 So.2d 447, 450 (¶ 7) (Miss.2005).
A. Length of the Delay
¶ 10. Under Barker, “[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.” Barker, 407 U.S. at 530, 92 S.Ct. 2182. In Mississippi, any delay from the date of arrest, indictment, or information until trial exceeding eight months is presumptively prejudicial. Stark, 911 So.2d at 450 (¶ 7); Smith v. State, 550 So.2d 406, 408 (Miss.1989).
¶ 11. Ben was arrested on October 19, 2007, and he was incarcerated until November 5, 2007, when he posted bail. Ben was not indicted until November 8, 2008, and trial began on May 11, 2009. Since the delay exceeds eight months, it is presumptively prejudicial, and the cause of the delay must be analyzed under the remaining Barker factors.
B. Reason for the Delay
¶ 12. “Once a delay is found to be presumptively prejudicial, the burden of proof shifts to the State to show cause for the delay.” Stark, 911 So.2d at 450 (¶ 11). The appellate court must determine *14 whether the delay should be charged to the State or the defendant. Id. Since the burden is on the State to provide a defendant with a speedy trial, this factor is weighed against the State unless it can show either that the delay was caused by the defendant or that the delay was for a good cause. Id.; Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991).
¶ 18. The majority of the delay was caused by the length of time it took to perform DNA testing on the evidence. The report from the crime lab, which included the DNA tests from Orchid, were not confirmed until mid-July 2008, one month after the Leake County grand jury’s June meeting. The case was not presented to the grand jury until its next scheduled meeting in November.
¶ 14. However, the trial judge signed an agreed order of continuance on January 27, 2009, which states that Ben’s trial counsel filed a motion for continuance. The trial judge granted this motion and continued the matter until May 11, 2009, the day trial was set to begin. “Well-taken” motions for continuance may justify a delay in a criminal ease. Flora v. State, 925 So.2d 797, 815 (¶ 63) (Miss.2006).
¶ 15. As it is apparent that there was reason for delay from both Ben and the State, we find this factor to be neutral.
C. Assertion of the Right to a Speedy Trial
¶ 16. Ben filed a motion to assert his right to a speedy trial and a motion to dismiss for a violation of his right to a speedy trial on January 5, 2009. Shortly thereafter, the agreed order of continuance was signed. During the hearing on this motion, Ben admitted that the fact that a significant amount of time • had elapsed would not weigh in his favor. We agree. In Adams v. State, 588 So.2d 165, 169-70 (Miss.1991), the Mississippi Supreme Court held that a demand for dismissal coupled with a demand for instant trial was insufficient to weigh the third Barker prong in defendant’s favor where the motion came after the bulk of the delay had elapsed. This factors weighs against Ben.
D. Prejudice to the Defendant
¶ 17. There are three main considerations in determining whether the accused has been prejudiced by a lengthy delay: “(1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.” Jefferson v. State, 818 So.2d 1099, 1108 (¶ 21) (Miss.2002) (internal quotations omitted). “Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation.” Sharp v. State, 786 So.2d 372, 381 (¶ 19) (Miss.2001).
¶ 18. Ben contends that due to the lengthy delay, he was unable to work and suffered anxiety. Ben also argues that the delay affected the memories of potential witnesses. Ben contends that several of the riders who got on the bus shortly after the rape could have testified about Monica’s behavior. Ben’s trial counsel stated that several of these witnesses had been interviewed and could not remember anything. While Ben argues he was prejudiced by the fading memory of potential witnesses, the fact remains that Ben was able to contact these witnesses in order to prepare his defense. Just because a potential witness’s recollection fails to support Ben’s theory does not indicate prejudice to his defense.
¶ 19. Although a delay did exist, we cannot find that Ben’s constitutional right to a speedy trial was violated. This issue is without merit.
*15 II.JURY
¶ 20. In his next issues, Ben contends that the trial judge required him to make peremptory challenges even though the State had not presented a full panel of jurors. However, Ben failed to make a contemporaneous objection, a fact which Ben readily admits. This issue is therefore waived. See Wardley v. State, 760 So.2d 774, 777 (¶ 11) (Miss.Ct.App.1999). Even if we were to review this argument subject to the plain-error rule, we would find no merit. The State accepted twelve jurors prior to submitting them to Ben. Ben then proceeded to exercise his peremptory strikes. This issue is without merit.
III.HEARSAY STATEMENTS
¶ 21. Ben contends that statements made by Hockett and Hines were hearsay and should not have been admitted. In regard to Hockett’s testimony, Ben claims that her statement, “[t]here was nothing to indicate that [Monica] was not telling the truth,” was hearsay. However, Ben failed to make a contemporaneous objection; thus, we decline to review this argument on appeal. Davis v. State, 43 So.3d 1116, 1126 (¶ 35) (Miss.2010).
¶ 22. Ben argues that Hines’s testimony should not have been admitted. Hines testified that Monica told him she had been raped by Ben. Ben’s trial counsel objected that whatever Monica had told Hines was hearsay and did not fall under any hearsay exception. Hines’s testimony was clearly hearsay, as it was offered to prove that Ben had raped Monica. The trial judge determined that the testimony met the hearsay exception under Mississippi Rule of Evidence 803(3). Rule 803(3) exempts a statement from the hearsay rule if it is “[a] statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed.... ” We find that the trial court erred in admitting the hearsay statement under Rule 803(3). The statement is a statement of belief to prove a fact believed by the victim, but it does not relate to the execution, revocation, identification, or terms of the victim’s will. Thus, Rule 803(3) is not a viable avenue for admission of Monica’s statements to Hines.
¶ 23. However, we find that the admission of Hines’s statement was harmless error since the properly admitted evidence, as will be discussed further in this opinion, is more than sufficient to support the jury’s verdict. This issue is without merit.
IV.TESTIMONY OF OTIS MINGO
¶ 24. Ben argues that the trial court erred in allowing Mingo’s testimony before the jury. Ben objected to Mingo’s testimony that discussed certain statements made by Ben to Mingo about Monica two days prior to the rape. Monica was lying on a picnic table at the Transit Authority with her legs propped up. Ben purportedly told Mingo: “That stuff looks real good.” Ben contends that this statement by Mingo was not disclosed during discovery. However, the trial court noted that Ben was notified of the State’s intent to use Mingo as a witness as early as mid-January 2009, approximately five months prior to trial.
¶25. Regardless, Ben did not seek a continuance or a mistrial. “The failure to request a continuance constitutes a waiver of the discovery violation.” Sims v. State, 928 So.2d 984, 988 (¶ 19) (Miss.Ct.App.2006). Therefore, this issue is procedurally barred from our consideration on *16 appeal because Ben failed to move for a continuance at trial.
V. WEIGHT AND SUFFICIENCY OF THE EVIDENCE
¶26. Ben contends that the evidence was legally insufficient to support the verdict, and the verdict is against the overwhelming weight of the evidence.
¶ 27. In regard to whether the evidence was legally sufficient to support the verdict, we look to our standard of review. “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. Id. However, it is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
¶ 28. “An individual may be found guilty of rape on the uncorroborated testimony of the prosecuting witness, where the testimony is not discredited or contradicted by other credible evidence.” Parramore v. State, 5 So.3d 1074, 1077 (¶ 12) (Miss.2009). According to Monica, Ben held her down and raped her. Monica testified that she resisted, but Ben was too strong. DNA from both Monica and Ben was found on a paper towel near where the rape had occurred. Although Monica failed to report the rape immediately afterward, she testified that she was ashamed of what had happened. It was the jury’s job to determine Monica’s credibility, and it clearly resolved any conflicts in the evidence in the State’s favor. Lacking credible evidence to prove otherwise, the jury found that Ben had forcibly raped Monica. We find that there was sufficient evidence to find Ben guilty of forcible rape.
¶29. In regard to whether the verdict is against the overwhelming weight of the evidence, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). From the evidence described in the preceding paragraph, we cannot find that allowing the guilty verdict to stand would sanction an unconscionable injustice. This issue is without merit.
VI. SENTENCE
¶ 30. In his final issue, Ben argues that his sentence was disproportionate when compared to sentences given to those convicted of the same offense. As a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992). However, a sentence that is “grossly disproportionate” to the crime committed is subject to attack on Eighth Amendment grounds. Id. “[A]s the Mississippi Supreme Court has said on countless occasions, ‘[s]o long as the sentence imposed is within the statutory limits, sentencing is generally a matter of trial court discretion.’ ” Williams v. State, 784 So.2d 230, 237 (¶ 19) (Miss.Ct.App.2000) (quoting Green v. State, 631 So.2d 167, 176 (Miss.1994)).
¶ 31. Pursuant to Mississippi Code Annotated section 97-3-65(4)(a) (Supp.2010), a person convicted of forcible sexual intercourse “shall be imprisoned for life in the State Penitentiary if the jury by its verdict *17 so prescribes.... ” Ben’s guilt and sentence were set by the jury. Ben cites to several cases involving rape in support of his argument; however, in two of these cases, the defendants were sentenced to life in prison.
¶ 32. The United States Supreme Court stated that a three-pronged test should be used when a sentence imposed leads to an inference of gross disproportionality. Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), overruled in part by Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The supreme court has stated that: “Unless a ‘threshold comparison of the crime committed to the sentence imposed leads to an inference of gross dis-proportionality,’ ” an analysis under Solem is not necessary. Ford v. State, 975 So.2d 859, 869 (¶ 39) (Miss.2008). Ben was sentenced pursuant to the statutory guidelines, and we do not find that his sentence leads this Court to an inference of gross disproportionality. Therefore, a review under Solem is not necessary. This issue is without merit.
¶ 33. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF RAPE AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. MYERS AND RUSSELL, JJ„ NOT PARTICIPATING.

. The Court of Appeals declines to identify victims of sexual assault; thus, we have changed the victim’s name and other pertinent names to protect her identity.