# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-01366-SCT

## CONSOLIDATED WITH

## NO. 95-KA-00152-SCT

*SIMEON HUGHES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/30/1995 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES A. WILLIAMS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/15/2001 |
| MOTION FOR REHEARING FILED: | 1/3/2002; denied 2/21/2002 |
| MANDATE ISSUED: | 2/28/2002 |

### BEFORE McRAE, P.J., COBB AND DIAZ, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. This is a criminal appeal from the Circuit Court of Lauderdale County, Mississippi, where Simeon Hughes was indicted, tried by a jury, and convicted of armed robbery. Hughes, a habitual offender, was sentenced to 34 years in the custody of the Mississippi Department of Corrections without the possibility of parole. This case comes before this Court consolidated from a previous appeal of the same parties and crime. In Hughes's previous appeal, his attorney believed there was no reversible error. The Court of Appeals affirmed Hughes's conviction in his first appeal. Based upon a review and decision by the United States Court of Appeals for the Fifth Circuit, this Court now reviews Hughes's out-of-time direct appeal, his second appeal. ***Hughes v. Booker***, 220 F.3d 346, 353 (5th Cir. 2000). With new counsel to assist him in his appeal, Hughes is seeking a reversal and remand for a new trial or in the alternative a remand for resentencing.

## FACTS

¶2. On April 14, 1994, Hughes threatened Henry Earl Brown with a gun and took $20 from him. Brown was the only witness to testify at the trial of Hughes. Brown testified that he stopped at the Amoco Station in Meridian to get some coffee and bait his coon traps. He said that Hughes and a woman approached him at the Amoco. The woman introduced herself as Hughes's sister and asked him for a ride home and some money. Brown gave the woman two dollars, took her home, and accompanied her inside the home. The

woman asked Brown to spend a little time with her before he went out to set his coon traps. Brown told the woman that "sex-wise," he had nothing to offer because cancer had destroyed his virility.

¶3. Brown testified that about 5 minutes later, Hughes entered the home. Hughes asked Brown if he wanted to buy a nine millimeter handgun. Hughes pulled the gun out from behind his back to show Brown. Hughes's sister then asked Brown to give them $20 so that they could buy some crack cocaine. Brown testified that he told them he did not throw his money away on drugs. He said Hughes moved in closer to him, and Brown said, "I think I know what y'all up to. It's time for me to go, and I made a break for it." Brown testified that the woman then "snatched" Hughes down on the couch. When he got up, she grabbed him, and Brown shoved her back. He then testified that Hughes said that if he hit his sister again he would kill him. Hughes then hit Brown on the head with the pistol, causing him to bleed. The woman took the money from Brown's front pocket, tearing the pocket, and dropped it on the floor. Brown picked his roll of money back up. Hughes told Brown to give his sister the $20.00. Brown submitted to Hughes because Hughes had a gun drawn on him. Brown actually had over $300 dollars, but testified that he told Hughes that he would have to kill him to get all his money. So, Hughes allowed Brown to count out exactly $21 to give to Hughes's sister.

¶4. Hughes now argues that several errors occurred at trial including: (1) improper jury instructions, (2) failure to instruct the jury on lesser-included offenses, (3) error in excluding Hughes from chambers during the striking of the jury, (4) error in denying Hughes his Fifth Amendment right to silence, (5) ineffective assistance of counsel, and (6) error in sentencing Hughes as a habitual offender. Most of these errors, as the State points out, are procedurally barred because proper objections were not raised at trial to preserve the issues. Nevertheless, this Court will address the merits of each of Hughes's assertions.

## LEGAL ANALYSIS

### I. Did the trial judge err in instructing the jury on elements of the crime that did not conform to the indictment?

¶5. Hughes argues that parts two and three of Instruction S-1 impermissibly vary from the indictment and that the facts do not support the instruction given to the jury. Parts two and three of Instruction S-1 state:

> 2. The Defendant, Simeon Hughes, did, either alone or with others, wilfully unlawfully and knowingly take or attempt to take the personal property of Henry Earl Brown from the person of Henry Earl Brown by force or by putting him in fear of immediate injury to his person;
>
> 3. By the exhibition of a deadly weapon.

The indictment charges the following:

> Simeon Hughes .... did wilfully, unlawfully and feloniously take or attempt to take the personal property of Henry Earl Brown, consisting of Twenty Dollars ($20.00) ... from the person or presence of Henry Earl Brown against his will by violence to his person by the use of a deadly weapon, a handgun, putting the said Henry Earl Brown, in fear of immediate injury to his person...

Hughes complains that the instruction should have included the amount of the personal property taken from Brown. He also argues that the instruction should not have included the "either alone or with others" language because this implies that other people may have participated in the crime. These arguments are

without merit. The differences between Instruction S-1 and the indictment are minute. Furthermore, the jury was fully aware of the amount of personal property taken from Brown; therefore, it makes no difference whether the instruction included the exact amount.

¶6. Hughes believes that the "exhibition of a deadly weapon" should not have been an element of the instruction. Hughes somehow contends that one of Brown's responses to the prosecutor's questions did not warrant the inclusion of this third part of the instruction. At some point during his cross-examination, Brown stated that Hughes did not have to point the gun at him after Hughes had knocked him in the head with it. Putting this statement into context, the jury could have reasonably interpreted this to mean merely that regardless of whether Hughes was pointing the gun at Brown, Brown was put in enough fear to feel threatened with deadly force by the exhibition of the handgun. From a factual standpoint, Hughes's proposition is without merit. Furthermore, this was a factual issue that was left to the interpretation of the jury.

### II. Did the trial court err in failing to instruct the jury on the lesser offenses of aggravated assault and simple assault?

¶7. Hughes gives several arguments for his assertion that he should have been charged with lesser crimes. First, he argues that since his sister was the one who took the money, he did not actually rob Brown. Secondly, he states that he was only defending his sister from Brown and he believed that Brown owed his sister the $20.00. Third, he argues that since Brown did not receive medical treatment, there is no proof that his injuries were serious enough to support the crime of armed robbery. There is no support in the record for Hughes's assertion that the trial court erred by failing to give him an instruction on simple assault. Hughes hit Brown on the head with a gun and threatened Brown with the specific intent to put Brown in fear and take his money. However, there is evidence in the record that would support an instruction on aggravated assault. The trial court and the State acknowledged that an instruction on aggravated assault would be appropriate, but Hughes's counsel stated, "Your Honor, we don't seek an instruction on aggravated assault." Therefore, Hughes effectively waived the instruction on aggravated assault.

### III. Did the trial judge err in excluding Hughes from chambers during the jury selection process?

¶8. Hughes argues that he was denied his right to be present during the jury selection process, a critical stage of the proceedings. This alleged error was not raised at trial or in the motion for new trial. A review of the record shows that Hughes was present when the jurors were questioned and that he was able to confer with his attorney about any possible disqualifications. During the jury selection in chambers, counsel for Hughes was told by the trial judge that Hughes had a right to be present. Rogers Druhet, Hughes's trial attorney, responded that he did not want Hughes present during the jury selection process in chambers. Hughes now argues that the jury selection process was a critical stage and that he had a right to be present.

¶9. In *Davis v. State*, 767 So.2d 986, 992 (Miss. 2000), this Court held that the critical stage of the jury selection process is when the jurors are questioned about matters regarding whether they know or are related to anyone involved in the case, know or have read about the case, or whether some hardship related to the charge might give cause for sequestration. The issue of whether the peremptory challenges stage of the jury selection process is a critical stage has not been before this Court. Furthermore, the issue of whether the defendant's counsel can waive the defendant's right to be present during peremptory challenges has not been before this Court.

¶10. Other state courts have held that the peremptory challenges stage of the jury selection process is a critical stage at which the defendant has a right to present. *See State v. Collins*, 648 P.2d 135, 138 (Ariz. Ct. App. 1982); *Muhammad v. State*, 782 So.2d 343 (Fla. 2001). This Court in *Chase v. State*, 699 So.2d 521, 534 (Miss.1997) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987)) held that "a criminal defendant 'is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" We find that a defendant's presence at the peremptory challenges stage would contribute to the fairness of the procedure. The trial judge recognized that Hughes had a right to be at the peremptory challenges and so does this Court.

¶11. However, this Court must now decide whether Hughes's counsel could effectively waive Hughes's right to be present during peremptory challenges. This Court has held that "a party is bound by the acts of his attorney." *Stringer v. State*, 627 So.2d 326, 330 (Miss.1993). There are exceptions where a personal waiver of the defendant is required; however, the right to be present during peremptory challenges is not one of those exceptions. *See Wardley v. State*, 760 So.2d 774, 778 (Miss. Ct. App. 1999). Due to the trial counsel's decision to waive Hughes's right, we find no error in Hughes's exclusion during peremptory challenges.

### IV. Was Hughes's Fifth Amendment right to silence violated?

¶12. Hughes argues that certain statements made by the prosecutor during his closing argument violated his right to silence, since he declined to testify on his own behalf. This argument is without merit. The prosecutor, in closing, stated that "Simeon Hughes is the only one that knows why they let him [Brown] off with just $21 dollars." There were no noteworthy objections at trial regarding any statements made by the prosecutor during his closing argument. However, Hughes now argues that this is a direct comment by the prosecutor on his failure to testify.

¶13. Attorneys have wide latitude in arguing the facts and evidence in their closing arguments. *Ahmad v. State*, 603 So.2d 843, 846 (Miss. 1992). We find that the prosecutor did not make any remarks in his closing arguments that violated Hughes's Fifth Amendment right to silence.

### V. Did Hughes receive effective assistance of counsel?

¶14. The test for evaluating a claim of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). The appellant must establish that counsel's performance was deficient, and that the deficiency prejudiced his defense. *Id.* Hughes must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, he must overcome the presumption that counsel's decisions are a result of sound trial strategy. *Id.* Hughes asserts the following: Hughes's trial counsel, Rogers Druhet, should not have waived the preliminary hearing; no pretrial ruling was made concerning his prior convictions and no witnesses were presented for Hughes; the offer of aggravated assault was rejected; no instruction was given regarding Hughes's right to remain silent; the victim was not cross-examined effectively; no objection is made to an improper argument by the State; and Druhet at one point stated in closing that it would be "hard for us to find Mr. Hughes innocent of armed robbery, rather, guilty of armed robbery." Hughes does not offer any meaningful factual support for these assertions.

¶15. Proof of Hughes's prior convictions is evidenced in the record, and there is nothing in the record to indicate that these prior convictions should have been excluded in the sentencing phase of Hughes's trial. As for the preliminary hearing, in cases where a defendant has been indicted by a grand jury, the defendant is not entitled to a preliminary hearing. U.R.C.C.C. 6.05.

¶16. The assertion that Druhet's failure to call witnesses resulted in ineffective assistance of counsel is groundless and frivolous. There was evidence in the record that Hughes was accompanied by another male during the commission of his crime against Brown. The record gives no clear indication as to why Hughes's sister or the other male were not called as witnesses at the trial. However, Hughes gives no support as to why these witnesses should have been called or if the failure to call these witnesses prejudiced his case. In fact, Hughes's assertion is altogether unclear because his argument concerns a letter of continuance in which Hughes's counsel requested additional time to interview witnesses. Hughes's argument is illogical; there is no connection between the letter of continuance and a claim for ineffective assistance of counsel for failure to call witnesses. Hughes's assertion also complains of Druhet's failure to call witnesses at the sentencing hearing so that he could somehow contest the prior convictions and have them excluded from sentencing. This argument is groundless. The record supports the trial judge's sentencing of Hughes as a habitual offender.

¶17. As to the assertion that it was damning when Druhet said that it would be hard "to find Mr. Hughes innocent of armed robbery -- rather, guilty of armed robbery," this Court finds that this is a harmless mistake that does not give rise to ineffective assistance of counsel. Hughes does not give any support to any other assertions raised on appeal before this Court. Therefore, Hughes's claim of ineffective assistance of counsel is without merit.

## VI. Was Hughes properly sentenced as a habitual offender?

¶18. Hughes had prior convictions for burglary, burglary of a dwelling and felony shoplifting. Certified copies of the judgments were admitted into evidence as proof of these prior convictions. Hughes, in fact, stipulated that he was the person who committed these crimes. Hughes asserts that the number of the felony conviction for shoplifting in the indictment was different from the number upon which his habitual status was based. Although Hughes failed to object at trial regarding this issue, he now raises the issue on appeal. There is insufficient evidence before this Court to determine whether the difference in numbering was a clerical error or whether the actual conviction was different. However, regardless of whether the numbering was incorrect, Hughes stipulated to the fact that he was convicted of all three prior felonies. Furthermore, his argument concerned the numbering on the felony shopping lifting conviction. Hughes does not dispute the authenticity or numbering of the two burglaries, so those two felonies alone were sufficient to sentence Hughes as a habitual offender. *See* Miss. Code Ann. § 99-19-81 (2000).

## CONCLUSION

¶19. Based on a review of the record and of the briefs of both parties, this Court finds no reversible error. Therefore, the judgment of the Lauderdale County Circuit Court is affirmed.

¶20. **CONVICTION OF ARMED ROBBERY AS A HABITUAL OFFENDER AND SENTENCED TO SERVE A TERM OF THIRTY FOUR ( 34) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF PAROLE, SUSPENSION, OR OTHER REDUCTION, PAY COURT COSTS OF $184.50,**

**AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**