856 So.2d 523 (2003)
Steven Lamont CROSBY a/k/a Steve Salter, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00422-COA.
Court of Appeals of Mississippi.
May 6, 2003.
Rehearing Denied July 15, 2003.
Certiorari Denied December 4, 2003.
*526 Dan W. Duggan, Brandon, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and GRIFFIS, JJ.
BRIDGES, J., for the court.
¶ 1. The Grand Jury of Rankin County indicted Steven Crosby for the offenses of aggravated assault, kidnaping and convicted felon in possession of a firearm, all as a habitual offender. A jury trial followed in which the jury returned a verdict of "guilty." Crosby was then sentenced to serve a term of three consecutive life sentences without the possibility of parole in the custody of the Mississippi Department of Corrections. Following the trial court's denial of his motion for a directed verdict, motion for a new trial and JNOV, he now appeals to this Court.

STATEMENT OF THE ISSUES
I. WHETHER THE TRIAL ERRED IN DENYING CROSBY'S MOTIONS FOR A DIRECTED VERDICT, A NEW TRIAL AND A JNOV FOR EACH OF THE THREE OFFENSES.
II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE STATE TO AMEND THE INDICTMENT PRIOR TO TRIAL.
III. WHETHER THE TRIAL COURT ERRED IN ALLOWING A SHERIFF'S INVESTIGATOR TO TESTIFY AS A FIREARMS EXPERT.
IV. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A CONTINUANCE AT THE TIME OF A DISCOVERY VIOLATION ALLEGED BY THE APPELLANT.
V. WHETHER IT WAS WITHIN THE TRIAL COURT'S DISCRETION TO ALLOW LEADING QUESTIONS.

FACTS
¶ 2. On the evening of May 5, 2001, James Kevin Gibson traveled to Otis Singleton's trailer, located in Rankin County, Mississippi. Two men, Marcus Craft and Brandon Young, were already inside the trailer when Gibson arrived. Sometime after Gibson's arrival, another car pulled up to the trailer and the two men inside the trailer heard a fight break out outside between Gibson and another person, who was later identified as the Appellant, Crosby. Crosby's girlfriend, Joyce Anne Kemp, arrived and tried to break up the fight between Gibson and Crosby, but was told to go inside. During the commotion, Craft and Young witnessed, and later testified to, a "red beam" displayed across their chests through the window of the bedroom. However, neither Craft nor Young ever saw Crosby. After Joyce went into the trailer, she soon heard a car leave and, after looking out of the window, noticed both Crosby and Gibson were gone.
¶ 3. Sometime later, Crosby was seen in Magee, twenty three miles from the scene, at a Shell service station. It was at that Shell station where Crosby was captured on a video surveillance camera. While there, he asked to use a pay phone and handed the cashier a "bloody" dollar bill for change. Crosby was also witnessed *527 wearing muddy clothing and shoes. It was also at this gas station where police found a green Ford, belonging to Gibson. What police described as "blood smears" were found on the trunk lid, sides of the door frames, inside the trunk and within the car itself. Police eventually found Gibson, still alive, on the side of the road between Magee and Mendenhall. Later Crosby arrived at Kemp's mother's home, located five minutes from Singleton's trailer. No evidence was ever presented to indicate how Crosby got from the Shell station in Magee to the mother's house. A unique gun with a laser sighting apparatus was later found by police in the trunk of Kemp's car and the clip or magazine for the weapon was found under the passenger seat where Crosby was seated.

ANALYSIS

I. WHETHER THE TRIAL ERRED IN DENYING CROSBY'S MOTIONS FOR A DIRECTED VERDICT, A NEW TRIAL AND A JNOV.
¶ 4. With regards to Crosby's first issue, he argues that the trial court committed reversible error when it failed to grant his motions for a directed verdict, or in the alternative, JNOV on each of his three offenses. He states that the evidence was simply insufficient to sustain a verdict of guilty in his case and requires a reversal. Specifically, Crosby claims there was insufficient evidence of a gun being used in the aggravated assault as charged in the indictment. As for the kidnaping, he claims only that there is insufficient evidence. Lastly, Crosby claims that there was no connection made between him and the gun.
¶ 5. Our standard of review regarding motions for a directed verdict and also a JNOV is:
Sufficiency questions are raised in motions for directed verdict and also in JNOV motions. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Where a defendant moves for a JNOV or a directed verdict, the trial court considers all of the credible evidence consistent with the defendant's guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from this evidence. Id. This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could not find the accused guilty. Wetz v. State, 503 So.2d 803, 808 (Miss.1987.)
Holmes v. State, 798 So.2d 533, 538(¶ 18) (Miss.2001).
¶ 6. Motions for directed verdicts and motions for JNOV are both for the purpose of challenging the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993); McClain, 625 So.2d at 778. See also Strong v. State, 600 So.2d 199, 201 (Miss.1992). Our standard of review regarding the legal sufficiency of the evidence is as follows:
[W]e must, with respect to each element of the offense, consider all of the evidencenot just the evidence which supports the case for the prosecutionin the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. *528 Wetz, 503 So.2d at 808. "The jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Billiot v. State, 454 So.2d 445, 463 (Miss.1984). This Court may not make an assessment on the credibility of the trial witnesses as this task is one for the jury presiding over the matter. Kinzey v. State, 498 So.2d 814, 818 (Miss. 1986).
¶ 7. When this Court analyzes a jury's verdict to determine whether it goes against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact. This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible. The law provides:
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Groseclose v. State, 440 So.2d 297, 300 (Miss.1983).
¶ 8. According to the above standard of review, this Court is supposed to look at the evidence in the light most favorable to the verdict. We do not have the responsibility of re-weighing the evidence to determine which witnesses we believe had the most credibility.
¶ 9. In light of the standard of review, we must disregard this issue of the verdict being against the overwhelming weight of the evidence. Crosby cites Cooley v. State, 803 So.2d 485 (¶¶ 6-7) (Miss. Ct.App.2001), where this Court reversed and remanded where the following facts were observed: (1) Clark testified that he saw Cooley with a gun in his right hand; (2) Cooley then hit Clark with something, but it was not a gun, he just could not identify what he was hit with; and (3) he never did identify to the jury with what he was beaten. That case was reversed in spite of the fact that Cooley apparently had a gun in his hand. The problem was the indictment alleged that the beating was done with a hatchet and no one found or identified a hatchet during testimony.
¶ 10. First and foremost, this Court must distinguish the Cooley case from the present case. In Cooley, while there was blood found on the hatchet, laboratory analysis established that the blood was not that of the victim. In the case sub judice, while there was testimony that blood was found on the weapon, it was never analyzed to determine if it was the victim's blood.
¶ 11. In addition, there was expert testimony given by Dr. Yablon that the injuries to Gibson were consistent with the history received, that Gibson had been assaulted with a gun.
¶ 12. Also, there was testimony that blood was found on the end of the magazine found underneath the seat where Crosby was seated. Blood was also found on the victim, in the car, in the trunk, on the ground, and even on the currency presented *529 to the cashier at the Shell station. Craft and Young both testified that they noticed a laser light on their chests. A gun with a laser apparatus was found in a car where Crosby disavowed any knowledge of the gun.
¶ 13. It is clear from the record, there was an abundance of evidence to support the jury finding Crosby guilty of aggravated assault. It is the job of the jury to determine which witnesses are credible and which are not. All of the conflicting evidence involve jury questions and it was the responsibility of the jury to decide whether a weapon was actually used.
¶ 14. In regards to the kidnaping charge, there was sufficient evidence to support a jury finding of "guilty." In his brief, Crosby cites caselaw that states mere speculation, guesswork, and conjecture have no place in the courtroom. Edwards v. State, 469 So.2d 68, 69 (Miss. 1985). However, jury instructions were given in regards to reasonable inferences. In regards to the evidence itself, blood was found everywhere. There was blood found in Gibson's car, in the trunk of the car, and miles away the victim was found lying in a ditch, a ditch that happens to be on the way to Magee where Crosby was also seen. Crosby was caught on tape coming into a convenience store and handing the cashier a dollar bill stained with blood. The evidence is clear, Crosby thrashed Gibson, put him in his car and dumped him in a ditch.
¶ 15. Last, but not least, we consider the convicted felon in possession of a firearm charge. Again, there was sufficient evidence to support the jury's finding on this charge as well. Crosby had been convicted of at least two other felonies which were charged separately and arose out of separate incidents. One involved manslaughter, and the other involved aggravated assault. Also Craft saw a red beam of light that he claims had to belong to a gun. Crosby went in search of his laser gun which he misplaced. The gun was found and returned to Crosby. That same gun was later found in the trunk of a car in which Crosby was riding as a passenger, and the owner of the car told police that the gun did not belong to her. A clip or magazine for the laser sighted weapon was found underneath the seat where Crosby was seated.
¶ 16. Therefore this Court finds these claims are without merit.

II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE STATE TO AMEND THE INDICTMENT PRIOR TO TRIAL.
¶ 17. The next issue argued by Crosby is that the trial court erred in allowing the indictment to be amended, therefore, allowing him to be prejudiced. The law regarding pre-trial amendments of an indictment to charge habitual offender status is stated clearly in Rambus v. State, 804 So.2d 1052, 1060-61(¶ 24) (Miss. Ct.App.2001). It states:
Getting to the amendment itself, an indictment can be amended when the amendment goes to form and not to substance. Burson v. State, 756 So.2d 830 (¶ 14). When deciding whether an amendment goes to form or substance, this Court looks to see if the defenses the defendant had originally are equally available to the defendant after the amendment is made. Eakes, 665 So.2d at 859-60. After looking at the record in this case it becomes clear the same defenses were available to Rambus after the indictment was amended as were available before the amendment. Rambus would have the same defenses available to him in this case whether he was a repeat offender or not. For this reason, *530 the amendment in this case goes to form and not to substance, and thus would be allowed under Mississippi law. Also, the Uniform Circuit and County Rules allows an indictment to be amended so a defendant may be charged with habitual offender status. U.C.C.C.R. Rule 7.09. Therefore, the trial court was not in error in allowing Rambus's indictment to be amended to reflect his repeat offender status. We affirm as to this issue.
¶ 18. Crosby was convicted, in Hinds County Circuit Court, for manslaughter, a violent offense and was also convicted in Rankin County Circuit Court for aggravated assault. In accordance with the following caselaw, the indictment was allowed to be amended so that Crosby could be charged with habitual offender status. Therefore, the trial court did not err in allowing Crosby's indictment to be amended to reflect his repeat offender status. We affirm as to this issue.

III. WHETHER THE TRIAL COURT ERRED IN ALLOWING A SHERIFF'S INVESTIGATOR TO TESTIFY AS A FIREARM EXPERT.
¶ 19. During direct examination of the crime lab witness, the State qualified Gregg Eklund, an investigator with the Rankin County Sheriff's Department, as an expert for the limited purpose of answering questions concerning the clip found under the seat matching the gun found in the trunk. The defense was given an opportunity to voir dire the witness and later objected to his qualifications based upon asking him only two questions, one of which he could not answer. However, that last question concerned the number of twists and grooves in the barrel of this particular gun, which according to Crosby, is a rather basic question that any "expert" should have been able to answer. The trial court later allowed him to be qualified.
¶ 20. In Edwards v. State, 737 So.2d 275, 298(¶ 45) (Miss.1999), the Court stated that the question as to whether a person is qualified to testify as an expert is "left to the discretion of the court, and will not be overturned, absent an abuse and a showing the witness was clearly not qualified."
¶ 21. In accordance with the aforementioned caselaw, and from the evidence that is present in the record, this Court finds that the trial court did not abuse its discretion in allowing the witness to be qualified as an expert. Defense counsel should have asked more than just two questions during voir dire of the witness in order to show a clearer picture of abuse by the trial court. Considering the limited scope of the questioning, whether the clip matches up with the gun, and the expert's involvement in law enforcement over twenty years, the Court finds this claim without merit.

IV. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A CONTINUANCE AT THE TIME OF A DISCOVERY VIOLATION ALLEGED BY THE APPELLANT.
¶ 22. Crosby also seeks reversal and remand for a new trial based on a claim of a discovery violation, specifically, that blood was found on the gun. During Eklund's testimony, he mentioned finding blood on the weapon. Defense counsel, outside the presence of the jury, confirmed that he had no reports in his discovery that included whether or not blood was found on the weapon, or that the weapon tested positive for blood, which is required under Rule 9.04(A)(1, 4) of the Uniform Circuit and County Court Rules.
¶ 23. The Mississippi Supreme Court in Box formulated the guidelines which every trial court must adhere to *531 concerning newly discovered evidence. Box v. State, 437 So.2d 19, 23 (Miss.1983). First, the defendant, after making a timely objection should be permitted to interview the witness. Id. Second, if suspecting unfair surprise and that the defendant will be prejudiced, a continuance should be requested. Finally, the court may grant a continuance or set a new trial. Id. Defense counsel explained to the court this information was new, and not provided in discovery. After the explanation, defense counsel requested a continuance which was denied and further asked for and was denied a mistrial. Crosby claims he was entitled under the rules to a copy of any reports from which the State's witness was to testify.
¶ 24. However, this evidence had been in the custody of the Rankin County Sheriff since the crime occurred and was readily available to Crosby and his counsel. While there were no laboratory analysis done on the blood found on the gun, there was testimony stating that field tests were conducted. Since the gun was readily available to defense counsel, he had plenty of opportunity to get the blood tested. This witness was also made available to defense counsel and these questions certainly could have been asked of him. Therefore, this was not a discovery violation, thus Crosby's claim is without merit

V. WHETHER IT WAS WITHIN THE TRIAL COURT'S DISCRETION TO ALLOW LEADING QUESTIONS.
¶ 25. The case of Neal v. State, 805 So.2d 520 (Miss.2002), provides the most accurate caselaw on leading questions; when they are permitted and when they are not. It states:
M.R.E. 611(c) allows leading questions on direct examination when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party: (c) Leading Questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. The decision to allow leading questions rests within the discretion of the trial court and will not be disturbed unless there is a showing of abuse of discretion. McFarland v. State, 707 So.2d 166, 175 (Miss.1997).
Id. at 527 (¶ 25-27).
¶ 26. With respect to Marcus Craft, during the examination the trial court did allow limited leading questions, however, it was only for the purpose of developing his testimony as is permitted in M.R.E. 611(c). In addition, as to Crosby's claims that hearsay was admitted over objection, he failed to mention any specific hearsay that was allowed to come in outside of an exception. Therefore, these allegations are without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF COUNT I AGGRAVATED ASSAULT AND SENTENCE OF LIFE; COUNT II KIDNAPING AND SENTENCE OF LIFE; AND COUNT III POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF LIFE, ALL SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.