BRIDGES, J., for the Court.
¶ 1. Roosevelt Armstead was indicted by the grand jury of the Circuit Court of Washington County and charged with robbery of Danielle Bew and as an habitual offender under Mississippi Code sections 97-3-73 and 99-19-83 respectively. In a jury trial presided over by Circuit Judge W. Ashley Hines, on February 6, 2002, Armstead was found guilty and sentenced to life in prison. His motion for judgment notwithstanding the jury verdict or, in the alternative, for a new trial was timely filed and denied. Armstead appeals on the following issues:
STATEMENT OF THE ISSUES
I. WAS THE EVIDENCE PRESENTED INSUFFICIENT TO SUSTAIN ARMSTEAD’S CONVICTION?
*1054 II. DID THE STATE FAIL TO PROVE THE ESSENTIAL ELEMENTS OF ROBBERY?
III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING ARMSTEAD HIS RIGHT TO PARTICIPATE IN JURY SELECTION?
IV. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY COMMENTING IN FRONT OF THE JURY AND BY ALLOWING THE PROSECUTOR TO COMMENT IN FRONT OF THE JURY ABOUT ARM-STEAD’S DECISION NOT TO TESTIFY?
V. DID DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN PUTTING UP NO DEFENSE DURING CLOSING ARGUMENT?
VI. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN OVERRULING ARMSTEAD’S OBJECTION TO THE STATE’S DISCOVERY VIOLATION?
FACTS
¶ 2. One Friday night Patrolman Williams of the Greenville Police Department was dispatched to a complaint of robbery from the Exxon gas station on the corner of Alexander Street and Dr. Martin Luther King Drive. Upon arriving in the area, he began looking for a black man wearing dark clothing, a hat and a red jacket but was unable to locate anyone. Danielle Bew was the clerk who reported the incident and gave the description. Once Williams went into the store to meet with Ms. Bew, he reviewed the surveillance tape showing the robbery but was unable to identify the suspect.
¶3. In Ms. Bew’s testimony regarding the robbery, she claims that on that night at approximately nine o’clock she came out of the cooler to find a man standing at the counter trying to open the cash register. When he saw her he told her to “come and open it now; he wasn’t playing, and [to] come and open it now before he killed [her].” She was terrified that he would harm her so she went to the register, opened it and the suspect took the money and left the store. She stated that she was in very close proximity to him as she opened the register and actually looked at him as he was getting the money out and leaving the store.
¶ 4. Detective Crockett also reviewed the tape, interviewed Ms. Bew and dusted for fingerprints, including inside the cash register. The next day Ms. Bew went to the police station and looked through a book of pictures and selected some pictures that she said could possibly be of the suspect. Mr. Armstead’s picture was one of the ones she selected but in the photo he was younger and more clean cut. The police retrieved more current photos of Armstead and the other potential suspects she selected. When she saw a more current photo of Armstead, she identified him as the man who robbed the store without hesitation.
¶ 5. Ms. Bew claims she recognized Mr. Armstead again when he came in the store a few days after the robbery prior to her photo identification. That visit he asked to use the restroom. After he left, she pressed the panic button and when Patrolman Williams arrived she told him the man who robbed her had come back into the store.
ANALYSIS
¶ 6. The State in its brief addresses the issue of the supreme court’s allowing Arm-stead to file a pro se ancillary brief to amend the prior brief filed by his attorney. In their objection the State practically cop *1055 ied the entire opinion of Johnson v. State, 449 So.2d 225 (Miss.1984), into its brief. In Johnson, the court held that someone represented by an attorney should rely on his attorney to raise all credible issues for appeal. Id. Since there was no constitutional duty to allow these ancillary briefs, the court chose not to grant them to prevent the court from “wad[ing] off into a swamp of pro se ancillary briefs,” and to prevent attorneys general from having to respond to myriad of issues “dreamed up by an incarcerated individual.” Id.
¶7. In the case at bar the Supreme Court of Mississippi allowed Armstead’s pro se brief. This Court cannot reverse or alter the decisions handed down in its motions and orders. We merely make note of the attorney general’s objection.
I. WAS THE EVIDENCE PRESENTED INSUFFICIENT TO SUSTAIN ARMSTEAD’S CONVICTION?
¶ 8. The court’s authority to alter a jury’s verdict is limited. Naylor v. State, 780 So.2d 561, 565(¶ 25)(Miss.1999). On appeal appellate courts review all evidence “in the light most consistent with the verdict” and give the “prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Id. It is the responsibility of the jury to resolve conflicting evidence and determine the credibility of witnesses. Harris v. State, 527 So.2d 647, 649 (Miss.1988). If after this review it is determined that no reasonable man could have found beyond a reasonable doubt that the defendant was guilty the conviction will be reversed. Naylor, 730 So.2d at 565. However, if after review it is determined that reasonable minds could have reached differing conclusions in light of the reasonable doubt burden then the conviction cannot be disturbed. Id.
¶ 9. Armstead charges that the State depended on the photo lineup from which Ms. Dew picked his photo and her in-court identification of him for its conviction of him. He points to her testimony that while looking at the photos at the police station she was primarily looking for facial hair on the individuals but that in the photo she selected of Mr. Armstead he was clean shaven. Another problem Arm-stead has with the second group of photos Ms. Dew reviewed was that each listed the name of the individual at the bottom.
¶ 10. In attacking the credibility of the surveillance video reviewed by police and Ms. Dew then shown to the jury, Arm-stead highlights that the video did not show the person robbing the store well enough for anyone to identify him as the perpetrator. Armstead also argues that he was never found with the spoils of the crime and that the prosecution never established that he was in the area at the time the incident occurred or that his fingerprints were found at the scene.
¶ 11. The State offered testimony from Ms. Dew in which she conclusively identified Mr. Armstead from the second photo she saw. Ms. Dew also testified that she recognized him in the courtroom based on her seeing him the night of the robbery. There was testimony that she recognized him when he came into the store another day and that that identification was based on her seeing him the night of the robbery.
¶ 12. The prosecution did offer sufficient evidence to sustain a conviction of Mr. Armstead. This issue has no merit.
II. DID THE STATE FAIL TO PROVE THE ESSENTIAL ELEMENTS OF ROBBERY?
¶ 13. In proving the crime of robbery the prosecution must show that Mr. Armstead feloniously (1) took the personal property of another, (2) took it in his presence and (3) took it against his will by violence or threat of immediate injury to *1056 his person. Miss.Code Ann. § 97-3-73 (Rev.2000). Armstead challenges the State’s evidence on the third prong claiming it did not prove Ms. Bew was in fear of violence to her person. However, the trial transcript disproves this because as Ms. Bew testified that Mr. Armstead told her to open the cash register or he would kill her and that she was scared he was going to hurt her.
¶ 14. The State did prove that Ms. Bew was in fear of immediate injury to her person. This issue has no merit.
III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING ARMSTEAD HIS RIGHT TO PARTICIPATE IN JURY SELECTION?
¶ 15. Our review of the trial transcript leads us to conclude that Mr. Arm-stead was present in the courtroom and silent during the voir dire of the jury. However, when he and the attorneys adjourned to the judge’s chambers, he spoke up a few times regarding the peremptory challenges by the prosecution claiming they were only dismissing black potential jurors. His attorney consulted with him and attempted to explain the process and the judge even attempted to explain the Bastón process to him. However, after Armstead repeatedly interrupted the judge, all attempts to educate him on the matter ceased while his attorney led him out of chambers for a moment.
¶ 16. In Hughes v. State, 807 So.2d 426, 430-31 (¶ 8) (Miss.2001), the Mississippi Supreme Court found that a defendant has the right to be present during the voir dire of the jurors in open court and that right cannot be waived by his attorney. However, the defendant’s right to participate in the actual jury selection in the judicial chambers can be waived by his attorney. Id.
¶ 17. Armstead was present during the complete voir dire process. He was in the courtroom for the questioning of potential jurors and was present in the judge’s chambers during the challenges. It appears Mr. Armstead believes that since he was censured a few times and led into the hall to settle down, he was not given full participation in the jury selection. It is the opinion of this Court that he had the full opportunity to discover any potential juror problems and those reservations could have been communicated to his attorney. Mr. Armstead’s appeal for reversal on this issue is denied.
IV. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY COMMENTING IN FRONT OF THE JURY AND BY ALLOWING THE PROSECUTOR TO COMMENT IN FRONT OF THE JURY ABOUT ARM-STEAD’S DECISION NOT TO TESTIFY?
¶ 18. Upon reviewing the trial transcript of this case, we find Mr. Arm-stead’s charges against the judge and the district attorney to be untrue. Mr. Arm-stead claims that they “all through the trial said, ‘Mr. Armstead is not testifying,’ ” and Mr. Armstead believes that those comments influenced the jury. The transcript indicates that the possibility of his taking the stand was mentioned twice. Once was when the judge was giving the preliminary instructions to the jury and explaining how the court system works. Judge Hines explained to the jurors that Mr. Armstead did not have to testify and that whether or not he testified should not affect their deliberation. The second was by his own attorney during opening statements. He told the jury that they did not know yet whether or not Mr. Armstead would testify.
*1057 ¶ 19. Finding nothing in the transcript to support the appeal on this issue, the Court finds that reversal is denied.
V. DID DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN PUTTING UP NO DEFENSE DURING CLOSING ARGUMENT?
¶ 20. Armstead claims that his defense counsel failed to put up a proper defense in closing arguments. Armstead’s brief regarding this issue reads verbatim:
In the closing of argument attorney La-barre put up “no defense” on my behalf only said, “my client says he’s innocent.” Objection made but overruled. A conflict in interest, ineffective assistance of counseling, constitutional violation under fourteenth amendment.
¶21. To be entitled to the relief of ineffective assistance of counsel a defendant must show both a deficient performance and that, but for the deficient performance, a different result would likely have resulted. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2062, 80 L.Ed.2d 674 (1984); Donnelly v. State, 841 So.2d 207, 211(¶ 8) (Miss.Ct.App.2003). Armstead must also prove the ineffective assistance of counsel claim, under Mississippi Code Annotated Section 99-39-11(2) (Rev.2000), and the allegation must be alleged with specificity. Armstead “must specifically allege facts showing that effective assistance of counsel was not in fact rendered, and he must allege with specificity the fact that but for such purported actions by ineffective counsel, the results of the trial court decision would have been different.” Smith v. State, 434 So.2d 212, 219 (Miss.1983). See also Miss.Code Ann. § 99—39—9(1)(c) (Rev.2000); Terry v. State, 839 So.2d 643, 546(¶ 14) (Miss.Ct.App. 2002).
¶ 22. We find that Armstead failed to meet his statutory burden of proof regarding the allegation of ineffective assistance of counsel. His assertion that his attorney put up “no defense” during closing arguments other than to say “my client says he’s innocent” is completely false. The record reflects that both Mr. Arm-stead and his attorney William Labarre were given fifteen minutes in which to give a closing argument and both of them used approximately ten of those minutes. Mr. Labarre said much more in those ten minutes than Armstead asserts. Mr. Labarre attacked the failure of the police to find his fingerprints at the scene, the identification by Ms. Bew and emphasized other aspects of doubt.
¶ 23. Considering Armstead’s false accusations towards his attorney coupled with his failure to establish that the outcome would have been otherwise but for his attorney’s closing we determine he failed to meet his required burden of proof. Armstead is required to show that counsel’s performance was deficient and that he was prejudiced by counsel’s mistakes. Strickland, 466 U.S. at 686-87, 104 S.Ct. 2052. Finding no prejudice against him reversal on this issue is denied.
VI. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN OVERRULING ARMSTEAD’S OBJECTION TO THE STATE’S DISCOVERY VIOLATION?
¶24. On this final issue Arm-stead appeals because he was unaware Officer Williams would testify about his returning to the Exxon Station a few days after the robbery when Ms. Bew reported seeing the perpetrator again. He claims this is a reversible error by the prosecution for violating discovery procedures. “For a discovery violation to require reversal there must be a showing of prejudice and the non-disclosed material must be more than simply ‘cumulative.’ ” McCoy *1058 v. State, 811 So.2d 482, 482(¶ 15)(Miss.Ct.App.2002) (Citing Prewitt v. State, 755 So.2d 537, 541(¶ 8) (Miss. 1999); Buckhalter v. State, 480 So.2d 1128, 1128 (Miss.1985)).
¶ 25. Armstead shows no prejudice in that the identity of the witness was known and could have been interviewed by Arm-stead before trial. Also, Officer Williams’s testimony corresponds to the testimony given by Ms. Bew, which makes his testimony cumulative. Therefore, we can find no harm or showing of prejudice and that any discovery violation was harmless. The request for reversal on this issue is denied.
¶ 26. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF ROBBERY AND SENTENCE OF LIFE AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
McMILLIN, C.J., KING, SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER, AND GRIFFIS, JJ., CONCUR.