IRVING, J.,
for the Court.
¶ 1. An Adams County jury convicted Howard Alexander of burglary of a dwelling, kidnaping and armed robbery. He appeals, asserting error in the trial court’s (1) exclusion of him from participation in the jury selection process, (2) denial of his motion for a new trial, (3) denial of his motion in limine regarding certain testimony, and (4) allowing a hand print to be entered into evidence.
FACTS
¶ 2. Mary Eyrich testified that Howard Alexander, who lived in her neighborhood and occasionally asked Eyrich for odd jobs in exchange for money, broke into her home on the night of December 4, 2002, put a knife to her throat, demanded money, and repeatedly threatened to kill her while slamming her to the floor several times and breaking six of Eyrich’s ribs in the process. Eyrich also testified that Alexander grabbed her purse from her, made her give him the keys to her car, and picked her up and put her in the car. He then drove off heading in the direction of a sparsely populated area. While driving, Alexander went though Eyrich’s purse. He finally stopped and pushed her out of the car. She walked to Johnny and Hattie Evans’s house for help.
¶ 3. Eyrich later identified Alexander in a photo lineup, and Alexander’s palm print was found on an envelope located inside of Eyrich’s car. Alexander was arrested on December 16, 2002, and charged with committing the crimes against Eyrich.
¶ 4. Detective Tonya Butler testified that while fingerprinting Alexander, Alexander asked her, “Are those my fingerprints [ referring to prints found in Ey-rich’s car]?” Butler testified that during the fingerprinting, Alexander was not under any interrogation and that she had not yet asked him about the attack on Eryich when he blurted out his remarks. Butler further testified that Alexander then told her, “I did it, Tonya, but I am not going to tell them that.” Butler then presented Alexander with a Miranda waiver and attempted to interrogate Alexander regarding the attack on Eyrich, but Alexander refused to sign the waiver. However, Alexander did talk to Butler and ultimately admitted that he committed the crimes. Butler secretly recorded her conversation with Alexander although the recording did not come out too clearly.
¶ 5. During Alexander’s trial, the trial judge excluded the taped conversation which Butler had with Alexander but allowed the admissions Alexander made to Butler prior to being interrogated. Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. The exclusion of Alexander from Participation in the Jury Selection Process

¶ 6. Alexander contends his right to be present at a critical stage of the trial was irreparably violated because the trial judge never gave his counsel the opportunity to waive his right to be present at the peremptory challenge stage of the jury selection process. The State counters that Alexander’s attorney did not ask at any time that Alexander be present; therefore, *706 the defendant’s presence was effectively waived. We agree with the State.
¶ 7. The Mississippi Supreme Court, has recognized that a defendant has a right to be present at the peremptory challenge stage. Hughes v. State, 807 So.2d 426, 431(¶ 10)(Miss.2001) (holding that a “defendant’s presence at the peremptory challenges stage would contribute to the fairness of the procedure”). The Hughes court also held that a defense attorney could effectively waive the defendant’s right to be present during peremptory challenges:
However, this court must now decide whether Hughes’s counsel could effectively waive Hughes’s right to be present during peremptory challenges. This Court has held that “a party is bound by the acts of his attorney.” Stringer v. State, 627 So.2d 326, 330 (Miss.1993). There are exceptions where a personal waiver of the defendant is required; however, the right to be present during peremptory challenges is not one of those exceptions. See Wardley v. State, 760 So.2d 774, 778 (Miss.Ct.App.1999). Due to the trial counsel’s decision to waive Hughes’s right, we find no error in Hughes’s exclusion during peremptory challenges.
Id. at ¶ 11.
¶ 8. The record indicates that the trial judge and both the prosecutor and Alexander’s counsel met in chambers to deal with a pending motion and to begin the jury selection process. At no point during this time did Alexander’s counsel ask that Alexander be present. Accordingly, we find that Alexander’s right to be present during the peremptory challenge stage was effectively waived by his attorney since his attorney never asked that he be present during the peremptory challenge stage.

2. The Denial of the Motion for a Neiv Trial

¶ 9. In reviewing the decision of the trial court on a motion for a new trial, this Court views all of the evidence in the light most consistent with the jury verdict. A motion for a new trial addresses the weight of the evidence and should only be granted to prevent an unconscionable injustice.
Wall v. State, 820 So.2d. 758, 759(¶5) (Miss.Ct.App.2002) (quoting Daniels v. State, 742 So.2d 1140, 1143(1111) (Miss.1999)).
¶ 10. Alexander argues that the verdict rendered against him by the jury trial was contrary to the overwhelming weight of the evidence and that to allow it to stand would sanction “unconscionable injustice.” Alexander contends that Eyrich, the State’s only eyewitness to the incident, is an unreliable witness whose eyewitness identification is doubtful because she testified during cross examination that, at the time of her identification of Alexander, she was only seventy percent sure that Alexander was the man who attacked her. Alexander further argues that Butler’s testimony is tainted because he (Alexander) never made the confession that Butler said he made.
¶ 11. The State counters that Eyrich’s identification of Alexander coupled with other quality identification evidence is ample to support all three verdicts. The State contends that although Alexander argues that both Edna Eyrich’s testimony and Tonya Butler’s testimony lacked credibility, such judgment was a question for the jury to consider. In support of its argument the State directs our attention to Crosby v. State, 856 So.2d 523 (Miss.Ct.App.2003). We agree with the State.
¶ 12. In Crosby, we said:
When this Court analyzes a jury’s verdict to determine whether it goes *707 against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact. This Court does not have the task of reweighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible. The law provides:
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Id. at (¶ 7) (quoting Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)).
¶ 13. Considering the State’s evidence in light of the above standard, we find that the jury’s verdict is not contrary to the overwhelming weight of the evidence or that allowing it to stand would sanction an unconscionable injustice. This issue is without merit.

S. The Admission of Tonya Butler’s Testimony

¶ 14. Alexander contends that allowing Butler to testify regarding the inquiry which he made to her concerning the palm print was a violation of his Fifth Amendment right to counsel and his right not to incriminate himself. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Alexander argues that the totality of the circumstances in this case would lead a reasonable fact finder to find that the admission of the statements made by him during the fingerprinting process was a violation of his Fifth Amendment rights because he was in custody and was being interrogated. Alexander argues that Detective Butler’s agenda was to get him to confess to her, and that Butler should have at least given him a Miranda warning.
¶ 15. The State counters that the trial court’s ruling was not in error because the limited statement that was ruled admissible was a voluntary statement and not the subject of interrogation. We agree with the State. “During a suppression hearing, the trial judge sits as a fact finder. Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996). The trial judge can only be reversed for ‘manifest error if the decision is against the overwhelming weight of the evidence.’ ” Id. Weeks v. State, 804 So.2d 980, 994(¶ 48) (Miss.2001).
¶ 16. The trial judge suppressed the tape recorded conversation and statements that Alexander made to Tonya Butler during the formal custodial interrogation. The trial judge found that Alexander did not freely and voluntarily waive his Miranda rights upon making these statements. However, the trial judge did allow one statement that Alexander made to Butler prior to the interrogation.
¶ 17. Custodial interrogation has been defined as “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Alexander v. State, 736 So.2d 1058, 1063(1111) (Miss.Ct.App.1999) (citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). *708 “The initiation of questioning of the suspect who is in custody by law enforcement officers triggers the need for Miranda; therefore, if a suspect in custody initiates the conversation, that statement may be admissible as freely and voluntarily given even without prior Miranda warnings.” Id.
¶ 18. The record indicates that Alexander was not under interrogation when he told Detective Butler that he “did it” (committed the offenses against Eyrich). Alexander’s statement was voluntary and not the subject of any interrogation by Detective Butler. Therefore, no Miranda warnings were needed, and Alexander’s Fifth Amendment right to counsel and his right not to incriminate himself were not violated.
¶ 19. We find no manifest error or abuse of discretion on the part of the trial judge in admitting Alexander’s statement made during his fingerprinting session and prior to being formerly interrogated. This issue is without merit.
A Admission of the Palm Print
¶ 20. In addition to the brief filed by Alexander’s counsel, Alexander filed a pro se brief in which he argues that although the prosecution provided discovery of a piece of paper with a palm print on it, the prosecution never disclosed to him that the palm print was actually found on an envelope. In other words, he contends that the failure of the State to specifically identify the paper as an envelope resulted in his inability to prepare a defense to this piece of evidence. Therefore, his right to discovery was irreparably violated and a new trial should be granted.
¶21. We find this argument utterly ridiculous and does not merit any discussion. Nevertheless, we briefly point out that during the trial, when Alexander’s counsel was asked if there was any objection to the admission of a blown up picture of the envelope, he replied that there was no objection. Therefore, this issue also is procedurally barred because Alexander failed to raise it at the trial level. Moawad v. State, 531 So.2d 632, 634 (Miss.1988).
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF BURGLARY OF A DWELLING, AND SENTENCE OF TWENTY FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; CONVICTION OF KIDNAPING, AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND CONVICTION OF ARMED ROBBERY, AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ALL SENTENCES RUNNING CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY TO THE PRIOR SENTENCE FOR ASSAULT ON A LAW ENFORCEMENT OFFICER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ACCESSED TO ADAMS COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.