W. A. TUCKER and WIFE *v.* STEPHEN COCKE et al.

1. TRUSTEE: LIABILITY OF: TO ACCOUNT.—A trustee, who is the mere depositary of the legal title, and upon whom no duty is imposed in reference to the trust estate, is not liable to account for the hire and profits of the trust property, whilst in possession of one of the *cestuis que trust,* unless he has actually received them.

2. HUSBAND AND WIFE: WIFE NOT LIABLE AS AGENT OR BAILIFF.—A *feme covert* is not competent to contract to act as the agent or bailiff of another, so as to bind herself personally, and where she cannot expressly contract, the law will not raise an implied assumpsit; and hence, where a *feme covert* being one of several joint beneficiaries equally interested in property conveyed in trust, takes the exclusive possession, and receives the entire profits of the trust estate, she will not be liable to account to her co-beneficiaries for their proportionate share of such profits.

3. CHANCERY: PLEADING, ETC.—Parties are only entitled to such relief, as is within the scope and frame of their bill; and hence, if a bill be filed by a *cestui que trust* against the trustee, and another of the *cestuis que trust,* seeking to hold the trustee liable for the profits of the trust estate, and to recover possession, procure a division of the trust estate, if it be shown by the proof that the trustee is not liable to account, the profits having been received by the *cestui que trust,* who is a defendant, a decree to account cannot be rendered against such *cestui que trust.*

IN error from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

On the 1st day of May, A. D. 1832, the plaintiffs in error, Tucker

and wife, filed their bill in the District Chancery Court, at Fulton, in which they alleged in substance, that on the 30th day of December, A. D. 1822, one Hopkins Lacey, gave certain slaves by deed to Stephen Cocke, in trust for the use and benefit of the defendant Jane Buckingham the wife, and of complainant Minerva Tucker and others, the children of one N. B. Buckingham; that the defendant Stephen Cocke immediately accepted the said trust, and took possession of the said slaves; that the said Stephen had used them a part of the time for his own benefit, and had compelled Jane Buckingham, who had also used the same, to account to him, for hire; and that he had received a large amount, being the hire and profits of said slaves. That Stephen Cocke, now pretended that he had never accepted said trust, and never had possession of said slaves; but alleged that they were in the pretended possession of Jane Buckingham, who was holding under Cocke.

The bill further alleged, that Cocke during all the time he was trustee, had failed and refused to account, and had not permitted complainants and the other usees, who were jointly interested in said slaves with them, to have or enjoy any of the uses and profits of said slaves. The bill stated that the slaves were incapable of a division among the *cestuis que trust*, and prayed that they might be sold for a division; and that Cocke be compelled to account for the value of their hire since he had been trustee, and for a division of said profits among the beneficiaries.

Stephen Cocke answered, denying that he had ever accepted the trust. He stated that the negroes were never in his possession as trustee, but that the same had been in the use and possession of Jane Buckingham and her husband, until his death in 1849, and since that time in said Jane's possession. He denied that he ever received any hire for the said slaves, or compelled Jane Buckingham or any one else to account to him therefor; and relied on the Statute of Limitations; he also denied that Lacey had any right to convey said slaves by the deed of trust, and stated on this point, the facts relied on in the answer of Jane Buckingham.

Jane Buckingham answered, denying that she held the negroes under the trust deed made by Lacey, but stating that several years before the same was executed, said Lacey had executed a bill

of sale or deed to her for the same, and that under said title she held possession of said slaves in the State of Tennessee; and that fearing that she might possibly be disturbed in her said possession by the creditors of her husband, she had sent said slaves from Tennessee to said Lacey, in Alabama, and that said Lacey, without her knowledge or consent, sent the same to Monroe county in this State, with the said deed of trust, and delivered the same to her father, W. Cocke. That she afterwards moved to said county of Monroe, and regained possession of said slaves under her old title, and not under the said deed of trust; she denied that Cocke was trustee, or had ever held the slaves as such. She also relied upon the Statute of Limitations.

The deed of trust which was made an exhibit to the bill, recites that "Hopkins Lacey, for and in consideration of the sum of ten dollars, and for the consideration of the natural love and affection he bears to his friends and relatives, Jane Buckingham, and the children of N. B. Buckingham, (mentioning their names,) hath, and by these present doth, bargain, sell, and deliver, * * unto (the said) Stephen Cocke, as trustee, and in trust for the wife and children of said N. B. Buckingham, three negroes (mentioning them,) to have and to hold to the said Stephen Cocke, as trustee, and in trust as above specified." It is unnecessary to set out the answers of the other defendants, who were the surviving children of said N. B. Buckingham, and mentioned as beneficiaries in the deed.

It appeared that in 1822, when the deed was executed, that all the children were minors; that Tucker's wife was born in 1806, and married in 1830. That N. B. Buckingham died in 1849. That during his lifetime, the negroes were in the joint possession of himself and Jane, his wife, and since that time in her possession alone, and the minor children lived with them, and were supported by the hire and proceeds of the labor of said slaves.

S. J. Gholson, proved that in 1832, he heard S. Cocke say, that N. B. Buckingham had no property, and that the property at his house belonged to him, (Cocke) for the benefit of his sister Mrs. Jane Buckingham and her children; which would appear by examining the record.

R. Davis proved, that a short time before the suit was instituted, he called on Stephen Cocke, in relation to Mrs. Tucker's interest in said negroes, and that Cocke then admitted to him, that Mrs. Tucker was interested in them, under said deed; that he had no objection to a division, but that his sister Mrs. Jane Buckingham, objected to a division during her life, as it would compel her to break up housekeeping and to live with the children. He proposed on this account to have the slaves appraised, and that he would pay to Mr. Tucker his wife's share. Tucker objected to this, and when witness afterwards communicated this fact to Cocke, and that suit would be brought for a sale and division, he said he had no objection.

Daniel H. Morgan, the administrator of N. B. Buckingham, proved, that soon after his appointment as such he informed Mrs. J. Buckingham, that on a certain day he would come to have the property appraised; that she informed him that all the property then belonged to her and her children, under the control of Chancellor Cocke, and of S. H. Buckingham. She claimed the property under a deed of gift from Hopkins Lacey.

Prewett proved, that Cocke stated to him, that the land and negroes in possession of N. B. Buckingham belonged to him, Cocke, which he permitted the family to use.

The vice-chancellor decreed according to the prayer of the bill, for a sale and division of the proceeds of the negroes, and that Mrs. Jane Buckingham account for hire, &c. From this decree both Jane Buckingham and Tucker and wife appealed, to the Supreme Court of Chancery.

The chancellor, upon the hearing in that court dismissed the complainants' bill, and they sued out this writ of error.

*C. R. Crusoe,* for plaintiffs in error.

*W. F. Dowd,* on same side.

*Fulton Anderson,* for defendants in error.

*Sale* and *Phelan,* on same side.

Fisher, J., delivered the opinion of the court.

The objects intended to be accomplished by this bill were, to compel the defendant, Stephen Cocke, to account for the profits of certain property, alleged to have been holden by him in trust for the complainants and others; and to have a division of the property among the several parties entitled to the same.

We may pass over, without comment, so much of the answer as denies the acceptance of the trust by the defendant, or as questions the right or power of the donor to make the conveyance in this manner, of the property. All the circumstances tend to show an acceptance by the trustee, and after such acceptance, he, perhaps, upon well settled rules of law, would not be permitted to question the donor's power to convey, on the ground that he had previously conveyed to another, unless that other had asserted, and succeeded in establishing a claim to the property, under such prior title; and so far from this latter position being sustained, the reverse is made to appear by the deposition of one witness, and other corroborating circumstances. We may, therefore, safely assume the existence of the trust, and the question is as to the nature and extent of the duties which it imposed upon the defendant. The deed is made to the said Stephen Cocke, as trustee, and in trust for the parties (interested,) &c. The deed prescribes no particular duty to be performed in relation to the property by the trustee, but he appears merely to be the depositary of the legal title, for the use and benefit of the parties who were the peculiar objects of the donor's bounty. The use was intended, from the very nature of the instrument, to be transferred and vested in the beneficiaries, and was, in fact, executed the moment the trustee, as he is denominated in the deed, delivered the property to the usees. Hutch. Code, 610, § 28.

There is no proof that the slaves ever were, at any time, in the actual possession of, or under the control of the defendant, but on the contrary, it is averred that they were delivered, a very short time after the execution of the deed, to Mrs. Buckingham, the mother of the other beneficiaries in the deed. This being the nature of the estate vested by the deed in the defendant, he could only be made liable for such sums of money as he received on

account of the profits arising from the labor of the slaves, and there is not even a pretence for saying that he ever received a dollar, or derived any benefit whatever from the trust property. The bill, therefore, so far as it seeks an account in this respect, being wholly unsustained, was properly dismissed.

But little remains to be said in regard to the other aspect of the case, so far as it seeks a division of the property. Mrs. Jane Buckingham, by her answer, sets up a claim to the slaves under a bill of sale, alleged to have been executed to her by the donor in the deed of trust, prior to the execution of said deed. This not being matter responsive to the bill, must, of course, be proved; and it is sufficient to say, that the alleged bill of sale was not produced on the trial, or any effort whatever, made to prove its contents; but, on the contrary, the proof is clear that as late as the year 1850, after the death of her husband, Nathaniel Buckingham, she asserted a claim under the deed of trust, and spoke of the slaves as the property of herself and children. This claim she asserted against the claim set up by her husband's administrator. Under this attitude of the case, she cannot object to a division of the slaves, according to the rights of the parties under the deed.

It is next insisted that, as the slaves appear to have been under her control and management since 1822 up to the time of filing this bill, she ought to account to the complainants for their portion of the profits. It will be borne in mind that the slaves were conveyed to the defendant, Cocke, in trust for the use and benefit of Mrs. Jane Buckingham and her children, by name, of whom the complainant, Mrs. Tucker, is one. It may, of course, be asserted, that the several beneficiaries were equally interested in the slaves. And it may be admitted, for the sake of the argument, that the deed created a separate estate, both as to the interest of Mrs. Buckingham in the slaves, and as to the profits. Yet, she would not be liable to account to her co-tenants for their share of the profits received during the lifetime of her husband, for the obvious reason, that she could not contract to become their agent, to manage their estate, or to be a bailiff to receive their money, while she was a *feme covert;* and where she had no power to make an express

contract, the law will not imply one. The presumption would be, that the money was received by her husband, and the account could, therefore, only be made against his estate. It is shown that the husband died in 1849; up to that time, therefore, the bill for an account cannot be sustained. As to moneys received since the death of Nathaniel Buckingham, the bill might be sustained for an account in favor of complainants, if the bill had been framed with that view against Mrs. Buckingham, but it is not so framed.

It is only necessary to remark, in conclusion, that the defendant, Stephen Cocke, is only a necessary party, for the purpose of a division of the slaves, and that he is in no manner liable to account.

The decree of the chancellor is reversed; so much of the bill as prays an account against the defendant, Cocke, is dismissed, and cause remanded, to be proceeded in according to this opinion, for a division of the slaves.