IRVING, J.,
 

 for the Court.
 

 ¶ 1. This appeal arises out of a dispute between James Stewart Williford Jr., Patricia L. Mosser, Marquetta Smith, and Michael J. Floyd, all of whom are joint owners
 
 [1]
 
 of a limited liability corporation known as Bluewater Logistics LLC (BLL).
 
 [2]
 
 In 2006, Mosser, Smith, and Floyd (referred to collectively as “remaining members”) decided to oust Williford from BLL. Thereafter, Williford filed a complaint in the Forrest County Chancery Court, requesting that he be allowed to remain a member of BLL. Sometime after the filing of Williford’s complaint, the remaining members decided to grant Willi-ford’s request rather than oust him. Regardless, the case went to trial, after which the chancery court found that Williford had been improperly ousted from the corporation and granted him $316,768.25 in damages. Feeling aggrieved, BLL and the remaining members filed this appeal, asserting that the chancellor: (1) applied an erroneous legal standard and abused his discretion in his final judgment; (2) adopted Williford’s findings of fact verbatim, thus lessening the deference that his findings are entitled to; (3) erred in granting a legal remedy not authorized in law or equity; (4) erred in granting a judgment outside the scope of the pleadings; (5) erred in granting monetary relief not authorized in the pleadings or by the evidence presented at trial; (6) erred in “not accepting the fact that an attorney can and does act on behalf of the attorney’s clients in litigation;” (7) erred in not granting BLL’s motion to dismiss; and (8) erred “in determining that the pleadings request the relief granted by the court, and erred in determining that any law justifies the relief granted by the court....” Williford cross-appeals and asserts that the court erred in declining to award him attorney’s fees.
 

 ¶ 2. We find that all of these issues can be condensed to the following issues: (1)
 
 *180
 
 whether we should employ a heightened standard of review due to the court’s adoption of Williford’s proposed findings of fact, (2) whether the relief granted was beyond the scope of Williford’s pleadings, and (3) what effect the Mississippi Limited Liability Company Act (MLLCA) has on the outcome of this case.
 

 ¶ 3. We conclude that the chancellor improperly granted relief that was beyond the scope of the pleadings filed by Willi-ford. Therefore, we reverse and render the decision of the chancery court. Since we find against Williford, we necessarily find no merit to his contention that he should have been awarded attorney’s fees.
 

 FACTS
 

 ¶ 4. BLL was formed in the summer of 2004 to bid on government contracts. The individuals who formed the corporation were Williford, Mosser, Smith, and Floyd,
 
 [3]
 
 each of whom owned an equal share in the corporation. In addition to owning the corporation and sharing in its profits, all four worked as employees for the corporation in various capacities. The agreement that established the corporation contained a “right of redemption” whereby:
 

 [T]he Company and the Members agree that the Company may, by a 75% Super Majority Vote of the Members, redeem any Member’s Interest for its then fair market value if the company determines, in its sole and absolute discretion, that that Member has either committed a felony or under any other circumstance that would jeopardize [sic] the Company’s status as an approved government contractor.
 

 ¶ 5. On January 31, 2006, Mosser, Smith, and Floyd met and decided to oust Willi-ford from the corporation. Williford was informed of the ouster shortly thereafter. The official notification of ouster stated that Williford would be paid for his one-quarter interest in the corporation as soon as a determination of the-value of BLL had been made. On February 10, 2006, Williford filed a complaint for a preliminary and permanent injunction to prevent his ouster from the corporation. In addition to requesting a temporary preliminary injunction, the complaint stated multiple claims against BLL and the remaining members. In count three, Williford requested “all rights and remedies available under the applicable statute, Miss.Code Ann. § 79-21-101, et seq. [sic].”
 
 [4]
 
 Willi-ford also asserted a number of tort claims, including negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, gross negligence, and intentional and willful breach of contract. Paragraph 17 was titled “DAMAGES AND RELIEF SOUGHT,” and stated, in total:
 

 1. Upon the giving of proper security as the Court deems fit, the plaintiff seeks a preliminary and then permanent injunction against the defendants which enjoins the defendants from the proposed action taken and orders that plaintiff is and remains a member of Bluewater Logistics, LLC and Bluewa-ter Bay, LLC, with all concomitant rights established by the Agreement, statutes[,] and other applicable laws. There is a likelihood of success on the merits, and the plaintiff will suffer irreparable loss and damagefe] in the way of
 
 *181
 
 lost income and other benefits if the injunction is not granted.
 

 2. An accounting of all assets, books, documents[,] and other papers relating to Bluewater Logistics, LLC and Blue-water Bay, LLC.
 

 3. An inspection of all documents relating to Bluewater Logistics, LLC and Bluewater Bay, LLC, in accordance with the provisions of the MLLCA.
 

 4. An appraisal of the company to determine the proper current fair market value of the plaintiffs interest in accordance with applicable common law and the MLLCA.
 

 5. Production of all information and records of the company in accordance with Miss.Code Ann. § 79-29-308.
 

 6. Compensatory damages to the plaintiff in the amount of lost income and lost benefits, damages for mental anguish and emotional distress, damages for humiliation, embarrassment, harm to his reputation[,] and other incidental damages caused by the unlawful activity of the defendants, attorney’s fees, interest, court costs, and punitive damages, all in a sum sufficient to compensate the plaintiff for his losses and punish the defendants for their unlawful conduct.
 

 7. An order enjoining the defendants and all members of the LLC from engaging in any similar future conduct.
 

 8. The court should order that the defendants be prohibited from using any LLC funds to pay for the defense of this case (including attorney’s fees and expenses), and further order any and all LLC funds expended in defense of this case be refunded by the individual members to the LLC.
 

 WHEREFORE, for the reasons stated, plaintiff seeks a preliminary and permanent injunction against the defendants which enjoins the defendants from any further attempts to oust him as a member, determines that the plaintiff remains a member of the company, orders continuation of all salary and other benefits to the plaintiff, allows the plaintiff to continue to engage in his activities for and on behalf of the company, awards the plaintiff sufficient compensatory and punitive damages along with attorney’s fees, court costs, and interest, both pre-judgment and post-judgment compounded, orders that member [sic] refrain from further unlawful conduct, and the members be enjoined from expending any LLC funds in defense of this case and/or order refund of such funds to the LLCs. Plaintiff seeks any other relief to which he may be entitled.
 

 ¶ 6. On February 15, 2006, BLL and the remaining members filed a motion requesting dismissal of Williford’s motion for injunction, or in the alternative, requested a continuance. On the same day, a hearing was held on the preliminary injunction. At the hearing, it became clear that Willi-ford and the other BLL members had come to disagree over how the corporation should be run. The remaining members contended, however, that Williford was still a member of BLL. On February 27, 2006, the chancery court issued an order granting the temporary injunction, in part. The chancellor ordered that BLL would still be able to maintain its day-to-day operations, as long as a CPA approved of the corporation’s expenditures. However, no member of BLL was allowed to pay himself or herself a salary, distribution, reimbursement, or expenditure without the chancery court’s approval. The parties were also ordered to meet with the CPA and attempt to resolve their dispute prior to trial. All other relief requested by either party was denied pending a hearing on the merits.
 

 ¶ 7. On March 10, 2006, BLL and the remaining members filed an answer to
 
 *182
 
 Williford’s complaint and a counter-complaint. The pleading denied the factual allegations in Williford’s complaint. BLL also maintained that it had the right to terminate Williford as an employee because Mississippi is an at-will employment state. On April 10, 2006, Williford filed an answer to BLL’s counter-complaint.
 

 ¶ 8. On June 13, 2006, a letter was sent from BLL’s attorney to Williford’s attorney, which stated, in pertinent part: “I am meeting with my clients later this week and we will determine all the issues- then, but in the meantime for your information, I am informed that they no longer wish to purchase Mr. Williford’s shares.” On June 16, 2006, Williford’s attorney sent a response letter that stated, in pertinent part: “If I am reading your letter correctly, this means that they [the remaining BLL shareholders] will not offer any money for his shares contrary to statements they have made to him in writing and statements you have made to the Court.” On August 21, 2006, BLL’s attorney again sent a letter to Williford’s attorney, stating: “I met with the three stockholders in Bluewater last week. Based on that meeting, let me reiterate what I had already told you: The offer to purchase Mr. Willi-ford’s stock is withdrawn. His firing as an employee is affirmed and confirmed.”
 

 ¶ 9. On August 28, 2006, BLL and the remaining members filed a motion requesting that the temporary injunction be dissolved. The motion alleged that:
 

 The relief sought in the [complaint] was premised on the position by Williford that he wished to remain a member of Bluewater and did not wish to sell his stock.... Bluewater no longer wishes to purchase Mr. Williford’s stock. This decision and position was reiterated in [BLL’s attorney’s] letter dated August 21, 2006, a copy of which is attached hereto.... Since the entire [complaint] is premised on the offer to purchase Williford’s stock (“... [t]his suit arises out of an unlawful effort by the three individual Defendants to oust plaintiff as a member of Bluewater Logistics, LLC[,] and Bluewater Bay LLC ....”) and since there is no longer any offer to purchase Williford’s stock, then the chancery action itself is without any factual basis and the relief demanded is also moot.
 
 Williford can remain a member and minority stockholder as he has elected to do, with all the rights and obligations of a member
 
 .... No part of the [complaint] is based on Williford’s firing as an employer [sic], which firing as an employee occurred concurrently with the offer to purchase Williford’s interest in Bluewater.... The relief requested by Williford was based on the contemplated sale of his stock to the LLC, whether forced or voluntary, and since there is currently no pending offer to purchase his stock, then the entire chancery action is moot....
 

 (Emphasis added). Three days later, on August 31, 2006, Williford filed a response to BLL’s motion, wherein he stated:
 

 Plaintiff filed his complaint in February of 2006, seeking an appraisal of the company, an accounting, access to documents, and information on the financial records.... Defendants are incorrect when they state throughout their motion that plaintiff has not sought such relief. The defendants officially resolved to pay plaintiff his 25% share after attempting to remove him as a shareholder. Them lawyer erroneously makes repeated references to this buyout as an “offer” which has been “withdrawn.” If the defendants properly removed plaintiff as a shareholder, they are required to pay his interest in the business. This requirement is by contract and is obviously equitable. Counsel for the defendant
 
 *183
 
 made numerous representations to the Court that the defendants acknowledged them requirement to pay plaintiff his 25% share. The actions of the defendants in this motion and throughout this litigation have been bizarre and irrational. For instance, the defendant shareholders already invoked the right-of-redemption clause to remove Williford as a member and pay him his share. Yet in defendants’ current motion, defense counsel makes the puzzling statement that “Williford can remain a member and minority stockholder as he has elected to do, with all the rights and obligations of a member.”
 

 On the same day, BLL filed an amended answer to Williford’s complaint. In the amended answer, BLL stated: “Affirmatively, the Defendants’ [sic] would show that members representing seventy-five percent (75%) of the voting shares met and made the decision to fire Williford which was done, and further made the decision to offer to purchase Williford’s stock. The decision to purchase Williford’s stock has been rescinded.”
 

 ¶ 10. On September 11, 2006, the parties entered into an agreed order that temporarily stayed all proceedings, continued the trial date, and provided for an independent appraisal of BLL. The trial was ultimately held on July 18, 2007. At trial, BLL’s attorney argued that Williford had never requested any relief other than being allowed to remain a member of BLL, and that there was therefore no issue that was ripe for trial. Williford’s attorney argued that there had been no formal written rescission of the decision to oust Williford, so that there effectively was no rescission of the ouster. The parties ultimately proceeded to trial, where multiple witnesses testified, including CPAs who testified regarding the value of the business. BLL’s attorney objected to the introduction of any evidence establishing the value of BLL, as he contended that any such evidence was moot because Willi-ford had not requested any monetary relief in his complaint. There was testimony by the remaining BLL members to the effect that Williford would be allowed to remain a stockholding member of BLL, but that he was still terminated as an employee.
 

 ¶ 11. After hearing all the evidence and arguments from the parties, the chancery court found that Williford was entitled to receive twenty-five percent of the value of BLL, which the court found was $816,768.25. BLL and the remaining shareholders filed a post-trial motion that alleged, among other things, that the chancellor had erred in granting Williford monetary damages when he had not requested such in his complaint. The chancery court denied the motion, and BLL and the shareholders then filed this appeal.
 

 ¶ 12. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 13. When reviewing the judgment of a chancellor, “we will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous.”
 
 Limbert v. Miss. Univ. for Women Alumnae Ass’n, Inc.,
 
 998 So.2d 993, 998 (¶ 10) (Miss.2008) (quoting
 
 Hamilton v. Hopkins,
 
 834 So.2d 695, 699 (¶ 12) (Miss.2003)). “Thus, where there is substantial evidence to support the chancellor’s findings, [we are] without the authority to disturb his conclusions, although [we] might have found otherwise as an original matter.”
 
 Ballard v. Commercial Bank of DeKalb,
 
 991 So.2d 1201, 1205 (¶ 13) (Miss.2008) (citing
 
 Dew v. Langford,
 
 
 *184
 
 666 So.2d 739, 742 (Miss.1995)). Despite our highly deferential standard of review regarding factual findings, “[r]egarding legal questions, [we apply] a de novo standard of review.”
 
 Wilburn v. Wilburn,
 
 991 So.2d 1185, 1190 (¶ 10) (Miss.2008) (citing
 
 Russell v. Performance Toyota, Inc.,
 
 826 So.2d 719, 721 (¶ 5) (Miss.2002)).
 

 1. Verbatim Adoption of Williford’s Findings
 

 ¶ 14. Although we accord great deference to a chancellor’s findings of fact, when a court adopts one party’s findings verbatim, we employ a heightened standard of review. As our supreme court has explained:
 

 Unfortunately, in the case sub judice, the chancellor failed to make his own findings of fact and conclusions of law. Rather, the chancellor adopted, verbatim, the findings of fact and conclusions of law prepared by [one party’s attorney]. This Court has explained that such findings “are not the same as findings independently made by the trial judge after impartially and judiciously sifting through the conflicts and nuances of the trial testimony and exhibits.”
 
 Rice Researchers, [Inc. v. Hiter,]
 
 512 So.2d [1259,] 1265 [ (Miss.1987) ]. Where the chancellor adopts, verbatim, findings of fact and conclusions of law prepared by a party to the litigation, this Court analyzes such findings with greater care, and the evidence is subjected to heightened scrutiny.
 
 Brooks [v. Brooks,
 
 652 So.2d 1113,] 1118 [(Miss.1995)] (citing
 
 Omnibank of Mantee v. United S. Bank,
 
 607 So.2d 76, 83 (Miss.1992);
 
 In re Estate of Ford,
 
 552 So.2d 1065, 1068 (Miss.1989)).
 

 In re Estate of Grubbs,
 
 753 So.2d 1043, 1046-47 (¶ 8) (Miss.2000). Therefore, we must examine whether the chancellor in this case adopted Williford’s proposed findings verbatim.
 

 ¶ 15. The chancery court’s first judgment was entered on July 19, 2007. It stated, in pertinent part:
 

 This matter came on for trial on July 18, 2007, at the Perry County Courthouse in New Augusta, Mississippi. The Court convened the trial on said date, and the parties presented their evidence through the testimony of witnesses, both expert and lay, and documentary evidence. During the course of the trial, the Court heard
 
 ore tenus
 
 motions and other requests for relief and made rulings during the course of the trial and on the record. All of those findings and the entire transcript of the hearing is incorporated in this final judgment.
 

 After having considered the evidence and having heard arguments of counsel and all of the issues presented by all parties, the Court finds that there were two primary issues for the Court to determine. First, the Court has been called upon to give consideration of the fair market value of Bluewater Logistics, LLC, as it existed as of January 31, 2006, and the one-quarter interest share of James Stewart Williford, Jr.
 
 For the reasons stated by the Court on the record,
 
 the Court hereby finds that James Stewart Williford, Jr., is entitled to compensation for his one-quarter interest as of that date, and the Court hereby adopts the opinions and conclusions of both experts ... and enters judgment in favor of Plaintiff Williford in the amount of $316,768.25....
 

 The second issue concerns defendants’ motion at the hearing for dissolution of the injunction and argument that the other three shareholders of the Bluewa-ter entity rescinded or withdrew their written decision to remove Williford as a partner. The Court is unpersuaded by
 
 *185
 
 this motion and finds it to be unmeritorious
 
 for the reasons stated by the Court from the bench.
 
 The Courts [sic] finds, among other things, that it would be inequitable and unjust for the Bluewater entity and its members to remove him as a member and not pay him his one-quarter interest.
 

 (Emphasis added). The order is signed by the chancellor, but states that it was submitted by Williford’s attorney. On January 8, 2008, the chancellor entered an amended final judgment with attached findings of fact and conclusions of law. This amended judgment came to the same conclusions as the chancery court’s final judgment. However, in explaining his conclusions, the chancellor stated the following, in pertinent part:
 

 Plaintiff Williford was removed from any involvement in the Bluewater entities following [the vote to oust him]. He has been barred from the premises, has had no participation in the companies, and he has had no involvement in any manner with the Bluewater entities. Despite the vote by the shareholders to pay his twenty-five percent (25%) interest, the shareholders have arguably attempted to revoke this decision. The Court was not provided with any credible official action taken by the company shareholders revoking its decision to pay Wil-liford his twenty-five percent interest.
 

 The amended judgment is signed by the chancellor and there is no indication on it that it was provided by Williford’s attorney. On January 14, 2008, BLL’s attorney filed a motion to set aside the amended final judgment and its findings, on the ground that the findings had been prepared unilaterally by Williford’s attorney, without allowing BLL’s attorney time to submit his own proposed findings of fact and conclusions of law.
 

 ¶ 16. On January 28, 2008, Williford’s attorney sent a letter to the chancery court that was subsequently filed in the court’s file. In it, he stated: “I am in receipt of defendants’ motion to set aside your final judgment as amended. Your judgment was consistent with your rulings from the bench following the trial.” Nothing in the letter indicated that Williford’s attorney had written the amended final judgment.
 

 ¶ 17. We cannot go outside the record in order to render our decision.
 
 Oakwood Homes Corp. v. Randall,
 
 824 So.2d 1292, 1293 (¶ 3) (Miss.2002). Furthermore, “[t]he appellant has ‘the duty of insuring that the record contains sufficient evidence to support his assignments of error on appeal.’ ”
 
 Id.
 
 at (¶ 4) (quoting
 
 Burney v. State,
 
 515 So.2d 1154, 1160 (Miss.1987)). In
 
 Oakwood Homes,
 
 our supreme court explained as follows:
 

 It is the appellant’s duty to see that all matters necessary to his appeal, such as exhibits, witnesses’ testimony, and so forth, are included in the record, and he may not complain of his own failure in that regard. [An appellate court] may only act on the record presented to it.
 
 Shelton v. Kindred,
 
 279 So.2d 642, 644 (Miss.1973). There are adequate procedures and safeguards to assure that incorrect or incomplete records are remedied. The appellant has failed to place the necessary record pertaining to this assignment of error before us, and we are therefore unable to consider it.
 

 Id.
 
 at 1293-94 (¶ 4) (quoting
 
 Branch v. State,
 
 347 So.2d 957, 958-59 (Miss.1977)).
 

 ¶ 18. The record here is inadequate for us to determine whether the chancery court’s final judgment and attached findings were submitted verbatim by Willi-ford’s attorney. The order does not state that it was prepared by the attorney, the attorney’s letter to the court does not state
 
 *186
 
 whether the attorney drafted the judgment, and there is no copy of the proposed findings that were submitted to the court and that allegedly became the court’s final judgment. BLL’s brief does not specify in the record where evidence of its allegations may be found. Therefore, we find no merit to this contention of error.
 

 2. Remedy Outside Scope of Pleadings
 

 ¶ 19. BLL contends that the chancellor improperly granted Williford relief that was outside the scope of his pleadings when the chancery court granted him monetary damages. BLL contends that the only requested relief in Williford’s complaint was that he be allowed to remain a member of BLL. Having reviewed the record and the pleadings filed by Williford, we agree.
 

 ¶ 20. “It is a well settled rule that a party complainant may have relief only on the case made by his bill of complaint and that the allegations of the pleading and proof must correspond.”
 
 Barnes v. Barnes,
 
 317 So.2d 387, 388 (Miss.1975). The
 
 Banes
 
 court ultimately reversed and rendered the portion of the trial court’s order that granted land to one party, because the party’s pleadings did not ask for the land.
 
 Id.
 
 at 388-89. In fact, this point of law may be seen in Mississippi jurisprudence as early as 1856: “As to moneys received since the death of Nathaniel Buckingham, the bill might be sustained for an account in favor of complainants, if the bill had been framed with that view against Mrs. Buckingham, but it is not so framed.”
 
 Tucker v. Cocke,
 
 32 Miss. 184, 190 (1856).
 

 ¶21. We have already quoted Willi-ford’s complaint at length. Having reviewed the complaint, we find that the only monetary damages that were sought were for tort claims that were not adjudicated by the chancery court. No monetary damages were sought in response to the ouster itself; the only relief that the complaint requested in that regard was that Williford be allowed to remain a member of BLL. Had Williford requested monetary damages rather than reinstatement as a member, the chancery court would have been authorized to grant him that relief. However, Williford did not request monetary damages. Instead, he requested only reinstatement in BLL, which was made available to him after BLL rescinded its ouster.
 

 ¶ 22. Although Williford’s complaint contains a brief general prayer for relief, we find this insufficient to allow the damages granted to him by the chancery court. We find that Williford’s prayer for relief must be considered in the context of his entire complaint and the requests for relief therein. In
 
 French v. Davis,
 
 38 Miss. 218, 223 (1859), the High Court of Errors and Appeals of Mississippi ruled on an appeal wherein the appellant claimed that “the amount of the judgment exceeded] the damages claimed in the complaint.” Specifically, the aggrieved party had been ordered to pay over two hundred dollars in damages, whereas the conclusion of the plaintiffs complaint had requested only two hundred dollars in damages.
 
 Id.
 
 at 221. In ruling on this claim of error, the court stated:
 

 This action was brought under the Statute of 1850, changing the forms of pleadings at common law; which provided that the “complaint,” thereby authorized instead of a declaration, should “conclude with a demand of the relief’ which the plaintiff claims. This complaint conforms to this provision, and
 
 the statement of damage in the conclusion, is to be regarded as surplusage,
 
 since there was a demand of judgment for the amount of the notes stated in the preceding part of the complaint.
 

 
 *187
 

 Id.
 
 at 224 (emphasis added). In other words, the more general prayer for relief at the conclusion of the plaintiffs complaint was insufficient to overcome the body of the complaint, which had requested, as damages, “judgment for the amount of said notes, with interest.”
 
 Id.
 
 Finally, we note that other jurisdictions also construe prayers for relief in the context of the complaint they are contained in.
 
 See In re City of Dallas,
 
 977 S.W.2d 798, 804-05 (Tex.App.-Fort Worth 1998) (holding that City of Fort Worth’s prayer for “further relief’ could not be interpreted as a request for a permanent injunction);
 
 Design Science Toys, Inc. v. McCann,
 
 981 F.Supp. 282, 283 (S.D.N.Y.1996) (holding that “while [the] prayers for relief ... contain somewhat ambiguous language ... in the context of the rest of the Complaint, the more reasonable reading of these prayers is for relief from contractual and other state-law breaches”);
 
 United States v. Commonwealth Edison Co.,
 
 620 F.Supp. 1404, 1412 (N.D.Ill.1985) (holding that “prayers for relief should be construed reasonably” and “read in the context of the allegations in the complaint.... ”).
 

 ¶ 23. The chancery court found that BLL’s actions were insufficient to withdraw the ouster, as there was no formal written rescission of the ouster decision. However, we find that BLL and the rerhaining members communicated the rescission of the ouster to Williford multiple times. The first instance that appears in the record is the June 13, 2006, letter from BLL’s attorney. In it, he stated that the shareholders no longer wished to purchase Williford’s BLL shares. It appears from the response sent by Williford’s attorney that the communication was not understood as a rescission of Williford’s ouster. The letter sent by BLL’s attorney on August 21, 2006, was not any clearer; it again appears that Williford did not understand that the ouster had been withdrawn.
 

 ¶24. Regardless of the clarity of the letters, BLL’s August 28, 2006, motion to dissolve the injunction clearly rescinded Williford’s ouster:
 

 Williford can remain a member and minority stockholder as he has elected to do, with all the rights and obligations of a member.... No part of the [complaint] is based on Williford’s firing as an employer [sic], which firing as an employee occurred concurrently with the offer to purchase Williford’s interest in Bluewater.... The relief requested by Williford was based on the contemplated sale of his stock to the LLC, whether forced or voluntary, and since there is currently no pending offer to purchase his stock, then the entire chancery action is moot....
 

 As seen above, the motion also confirmed Williford’s firing as an employee of BLL and raised the issue of Williford’s ability to proceed after having been granted the only relief that he had requested. BLL’s attorney again raised this latter issue immediately prior to trial on July 18, 2007, when he argued to the chancery court: “in fact, Bluewater and these members confessed that Mr. Williford could remain a member. That’s what he asked for, and that’s what he got.”
 

 ¶ 25. We find that this motion, which was filed with the chancery court, was sufficient to rescind Williford’s ouster. Even though it was not filed by BLL or the remaining members, but by their attorney, we find that the motion is sufficient because “[a]n attorney is presumed to have the authority to speak for and bind his client.”
 
 Parmley v. 84 Lumber Co.,
 
 911 So.2d 569, 573 (¶ 19) (Miss.Ct.App.2005) (citing
 
 Fairchild v. Gen. Motors Acceptance Corp.,
 
 254 Miss. 261, 265, 179 So.2d 185, 187 (1965) (holding that an attorney could bind client to settlement even when
 
 *188
 
 client denied having given attorney permission to do so)). This is so even in the context of criminal cases. For example, in
 
 Hughes v. State,
 
 807 So.2d 426, 430-31 (¶¶ 8 — 11) (Miss.2001), our supreme court noted that “a defendant’s presence at the peremptory challenges stage [of a trial] would contribute to the fairness of the procedure,” but went on to find that a defendant’s
 
 attorney
 
 can waive a defendant’s right to be present during that stage of the trial. In short, the law is clear in Mississippi that attorneys can act on behalf of their clients. Therefore, we are satisfied that the correspondence and motions drafted by BLL’s attorney were sufficient to rescind BLL’s decision to oust Williford as a shareholder.
 

 ¶26. At trial, Williford’s attorney argued that he had “received nothing in writing. A corporation can only act officially through its minutes and through written action. There’s been no written action taken.” The chancellor then asked, “This is just something [BLL’s attorney]’s verbalizing?” Williford’s attorney responded, ‘Tes, sir.” BLL’s attorney then brought the chancellor’s attention to the letters that had been sent to Williford’s attorney, as well as pointing out that there had also been filings in court. It is not clear from the record what the attorney was referencing, although the chancellor indicated that it was a letter that had been attached to a motion that was filed. However, as we have already discussed, BLL filed a motion, which carries a file stamp, indicating that the ouster had been rescinded. Regarding whether corporations can act
 
 only
 
 through their minutes, our supreme court has stated: “A corporation speaks and acts through its records and minutes.
 
 See
 
 18 C.J.S.
 
 Corporations
 
 § 191, § 554; 19 C.J.S.
 
 Corporations
 
 § 751.
 
 A formal corporate resolution is not the only evidence of corporate action
 
 [;] however, corporate records and minutes constitute the best evidence of corporate action. 32A C.J.S.
 
 Evidence,
 
 § 810.”
 
 Am. Tel. & Tel. Co. v. Purcell Co.,
 
 606 So.2d 93, 97 (Miss.1990) (emphasis added). It is clear to this Court that a corporation may act and be bound by its motions and pleadings filed in open court. Floyd testified that the remaining BLL members met and voted to allow Williford to retain his membership in BLL, and that their attorney then wrote a letter to Williford, informing him of that decision. For all the reasons discussed, we find that BLL successfully rescinded Williford’s ouster through a combination of correspondence and written motions.
 

 ¶ 27. Williford contends that there was no separation of his status as employee and his status as shareholder of BLL and that, therefore, he cannot be terminated as an employee but retained as a shareholder. However, the other members of BLL testified that each of them had initially worked as employees of BLL. In fact, BLL’s dissatisfaction with Willi-ford arose from his alleged tardiness at job sites and from an allegedly inappropriate remark made during a meeting with Cleco Power, a company with which BLL was trying to negotiate a contract. At trial, Smith testified that Williford would be allowed to remain a member of BLL, but that he had been fired as an employee. Furthermore, Smith, one of the original founders of BLL, testified that, at the time of trial, she had stopped working for BLL as an employee, but still retained her status as a shareholder of BLL. Smith indicated that Williford’s position was the same as her own in that regard. When questioned by Williford’s attorney, Smith testified: “There’s a difference between a partner and an employee.... I no longer have keys to the office ... nor do I have a Blackberry.” When questioned as to the
 
 *189
 
 difference between a partner and an employee, Smith stated, “As a partner he’s a member in the LLC. He owns stock, just like I do, but I have no day-to-day input in the business at this point either. I’m not an active member in the company.” Mos-ser also testified that Williford would remain a member of BLL, but that he would no longer work for the business. The evidence was uncontradicted at trial that there was a separate status of BLL members as shareholders and as employees. Therefore, we find that BLL was able to terminate Williford as an employee while allowing him to retain his status as a shareholder of BLL.
 

 3. The MLLCA
 

 ¶ 28. Finally, we address the effect, if any, of the MLLCA in this case. Williford urges us to find that the chancery court’s relief was authorized by two provisions in the MLLCA, namely section 79-29-214 (Rev.2001) and section 79-29-306 (Rev.2001).
 

 ¶ 29. Section 79-29-214(2) provides a member of a limited liability company interest the right to an appraisal and payment of the fair market value of his interest in a company in the event of certain occurrences. Sections 79-29-214(2)(a)(i, ii) provide no relief to Williford, as they allow for an appraisal and subsequent payment only in the event of a merger, or a “sale, lease, exchange, or other disposition of assets if the disposition would leave the limited liability company without a significant continuing business activity.” There is no evidence in the record to suggest that either of these conditions have been met. Section 79 — 29—214(2)(a)(iii) allows for appraisal and payment in the event of: “Any other action to the extent provided by the certificate of formation or limited liability company agreement.” As we have already found that there was a valid rescission of Williford’s ouster, this provision is also no help to Williford. The company agreement provided for the appraisal and payment of an member’s fair market share only in the event of an ouster. Since the ouster has been rescinded, section 79-29-214(2)(a)(iii) is also of no help to Williford.
 

 ¶ 30. Section 79-29-306(3)(a) states that: “A court of equity
 
 may enforce a limited liability company agreement
 
 by injunction or by such other relief that the court in its discretion determines to be fair and appropriate in the circumstances.” (Emphasis added). This provision is also of no help to Williford, as it merely grants a court of equity the ability to enforce a company agreement. The company agreement here provides for the payment of a member’s share of the company only when the member has been ousted. Since Willi-ford’s ouster was rescinded, there was nothing else in the company agreement to allow for the payment of his share of BLL. Nothing in section 79-29-306 indicates that a court may grant any relief beyond the scope of the company agreement.
 

 ¶ 31. This issue is also without merit.
 

 ¶ 32. In conclusion, Williford’s complaint requested only a rescission of his ouster, not monetary damages. Williford has since been granted that relief by BLL, thus rendering his suit moot. As such, we reverse and render the judgment of the chancery court, which granted Williford monetary damages that were never asked for in his filed pleadings.
 

 ¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES,
 
 *190
 
 J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . The company at issue refers to its owners as "members," and that terminology is used throughout the record below. Therefore, we also refer to owners as members in the remainder of this opinion.
 

 [2]
 

 . Bluewater Bay LLC is another company owned by some of the owners of BLL.
 

 [3]
 

 . A fifth individual was initially involved in forming BLL, but did not sign the agreement forming BLL and was not a member of BLL at the time this dispute arose.
 

 [4]
 

 . The MLLCA is codified as Mississippi Code Annotated section 79-29-101 to section 79-29-1201 (Rev.2001).